DECATUR BOARD OF EDUCATION, DISTRICT NO. 61, Petitioner, v. ILLINOIS EDUCATIONAL LABOR RELATIONS BOARD *et al.*, Respondents.

Fourth District   No. 4—88—0400

Opinion filed February 9, 1989.—Supplemental opinion filed on denial of rehearing April 19, 1989.

GREEN, J., specially concurring.

Philip H. Gerner III and John T. Taylor, both of Robbins, Schwartz, Nicholas, Lifton & Taylor, Ltd., of Decatur, for petitioner.

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and Bret A. Rappaport, Assistant Attorney General, of Chicago, of counsel), for respondent Illinois Educational Labor Relations Board.

Gregory J. Malovance and William G. Miossi, both of Winston & Strawn, of Chicago, and Sandra Holman, of Illinois Education Association, of Springfield, for respondent Decatur Education Association.

Stephen A. Yokich and Mark S. Stein, both of Cornfield & Feldman, of Chicago, for amicus curiae Illinois Federation of Teachers.

JUSTICE LUND delivered the opinion of the court:
The Decatur Board of Education, District No. 61 (School District), appeals from a decision of the Illinois Educational Labor Relations Board (Board) determining the School District had violated sections 14(a)(1) and 14(a)(5) of the Illinois Educational Labor Relations Act (Act) (Ill. Rev. Stat. 1987, ch. 48, pars. 1714(a)(1), (a)(5)), in refusing to bargain over class size. Decatur School District No. 61, 4 Pub. Employee Rep. (Ill.) par. 1076, case No. 86—CA—0042—S (Illinois Labor Relations Board, May 17, 1988).

■ The School District initially argues the Decatur Education Association, IEA-NEA (Association), waived the issue of class size and the issue of the impact of class-size decisions on teachers' working conditions. However, the stipulated facts submitted by the parties to the hearing officer indicate the parties agreed that the Association had not waived any bargaining rights concerning class size, "and/or the impact thereof." The School District's initial argument is rejected.

Section 10(a) of the Act (Ill. Rev. Stat. 1987, ch. 48, par. 1710(a)) provides the mandatory topics of collective bargaining are wages, hours, and other terms and conditions of employment. Section 4 of the Act (Ill. Rev. Stat. 1987, ch. 48, par. 1704) denotes, in broad terms, areas under the employer's control, and provides, in relevant part, as follows:

> "Employer rights. Employers shall not be required to bargain over matters of inherent managerial policy, which shall include such areas of discretion or policy as the functions of the employer, standards of services, its overall budget, the organizational structure and selection of new employees and direction of employees. Employers, however, shall be required to bargain collectively with regard to policy matters directly affecting wages, hours and terms and conditions of employment as well as the impact thereon upon request by employee representatives."

The words "directly affecting" and "impact" in the second sentence are of importance in this decision. Two members of the Board determined class size directly affected terms and conditions of employment, and one member determined that class size did not have a direct effect but had an impact on terms and conditions of employment. The finding of a "direct" effect ultimately resulted in a determination that class size is a mandatory subject for bargaining. An "impact" finding would have resulted in required bargaining concerning the "impact" of class-size determinations on terms and conditions of employment, although the class-size decision itself would have been reserved to the employer.

The Board members all agree that a finding of direct effect, under the second sentence of section 4, did not automatically result in mandatory bargaining. The Board adopted a balancing test whereby, after finding a direct effect exists, the interests of the employees are weighed against the School District's interest in maintaining unencumbered control over the managerial policy. This same balancing test could be used in determining when the impact of a particular

policy decision would be subject to bargaining.

We digress in an attempt to clarify what has been said. A liberal interpretation of the words "directly affecting" could include many subjects properly limited to managerial discretion. Almost every policy decision made by a school district could be said to have a direct effect or, at a minimum, an "impact" on conditions of employment. The first sentence of section 4 could, through a liberal interpretation of "directly affecting" and "impact," become meaningless, which would undoubtedly be contrary to legislative intent. The complexity of determining what is "directly affected" is illustrated by the disagreement among the Board members. We recognize this complexity and the necessity of establishing guidelines which assist in giving the statutory provisions meaning.

### BALANCING TEST

■ The Association argues the application of a balancing test is unnecessary in the instant case because classroom size is directly covered by section 10(a), and such a finding should bar the application of section 4. This argument is without merit. Too many factors in school operations overlap, requiring a method for deciding between managerial exclusivity and employee participation through bargaining. Any other decision would ignore the legislative history relating to section 4. The School District also disagrees with the application of the balancing test, but for the opposite reason. The School District argues the facts are similar to those in *Berkeley School District No. 87*, 2 Pub. Employee Rep. (Ill.) par. 1066, case No. 84—CA—0057—C (Illinois Educational Labor Relations Board, May 30, 1986). In *Berkeley*, the school management determined to change athletic programs from interscholastic to intramural. Hours and wages of coaches were affected, but the majority of the Board found the subject matter was not a working condition under section 10(a). The policy decision was held not to be a working condition and not subject to bargaining. The School District argues the Board should have similarly found class-size decisions not a term or condition of employment under section 10(a). There would, therefore, be no need to resort to a balancing test. Although the main emphasis of the *Berkeley* holding was about section 10(a), we note the Board determined the purpose of section 4 "clearly was to balance the employees' right to bargain collectively with 'the unique managerial problems besetting educational employers and the taxpayers who ultimately pay the bill.' " *Berkeley School District No. 87*, 2 Pub. Employee Rep. (Ill.) par. 1066, case No. 84—CA—0057—C, at VII—176.

Several factors support the adoption of a balancing test. Governor James Thompson mentioned the need to balance employers' and employees' interests in his Amendatory Veto Message of the Act (IV House Journal, 84th Ill. Gen. Assem., Sept. 23, 1983, at 9134 (1983 Sess.)). The Pennsylvania Public Employee Relations Act (Pa. Stat. Ann. tit. 43, §1101.201 *et seq.* (Purdon Supp. 1988)), which applies to school districts, served as a guideline in the preparation of the Illinois Act. The courts of Pennsylvania have approved the use of a balancing test. (*Pennsylvania Labor Relations Board v. State College Area School District* (1975), 461 Pa. 494, 337 A.2d 262.) We have previously held that following the interpretation given by the courts of Pennsylvania is a logical sequence resulting from the use of the Pennsylvania Act as a guideline for our Act. (*Board of Governors of State Colleges & Universities v. Illinois Educational Labor Relations Board* (1988), 170 Ill. App. 3d 463, 478-80, 524 N.E.2d 758, 767-68.) A balancing test has also been adopted by the Illinois State Labor Relations Board (*County of Cook (Cermak Health Services)*, 3 Pub. Employee Rep. (Ill.) par. 3030, case Nos. L—CA—87—200, L—CA—87—205 (Illinois Local Labor Relations Board, Sept. 21, 1987)), which may also be considered as persuasive authority. See Ill. Rev. Stat. 1987, ch. 48, par. 1717.

We agree with the Board and find that the balancing test is necessary to give proper interpretation to the statutory provisions. We determine the facts in *Berkeley* are sufficiently different from those in the present case so as to be of no precedential value. The balancing test measures the interests of both sides and is a reasonable method in resolving the overlap problem between sections 10(a) and 4.

### DEFERENCE TO AGENCY DECISIONS

The Board argues the court should adopt a standard of "considerable deference" in reviewing decisions construing what topics are mandatory bargaining subjects under the Act. The "considerable deference" language comes from the United States Supreme Court's opinion in *Ford Motor Co. v. National Labor Relations Board* (1979), 441 U.S. 488, 495, 60 L. Ed. 2d 420, 427, 99 S. Ct. 1842, 1848. *Ford Motor Co.* involved a situation similar to the instant case, where the Supreme Court reviewed a National Labor Relations Board (NLRB) decision which held a particular topic to be a mandatory bargaining subject. The court stated the NLRB is to be accorded considerable deference in making such determinations.

■ The courts in Illinois have already adopted a standard of

"substantial deference" for certain agency decisions. In general, the courts give substantial weight and deference to an interpretation of an ambiguous statute by the agency charged with the administration and enforcement of the statute. (*Illinois Consolidated Telephone Co. v. Illinois Commerce Comm'n* (1983), 95 Ill. 2d 142, 152, 447 N.E.2d 295, 300; *Scott v. Edgar* (1987), 152 Ill. App. 3d 221, 224, 505 N.E.2d 4, 6; *Mattson v. Department of Labor* (1983), 118 Ill. App. 3d 724, 727, 455 N.E.2d 278, 281.) Further, in a case involving educational matters, this court stated that where administration of a broad statutory standard has been delegated to an agency's discretion, the court should rely upon the agency's interpretation where there is reasonable debate as to the statute's meaning. (*Board of Education of Plainfield Community Consolidated School District No. 202 v. Illinois Educational Labor Relations Board* (1986), 143 Ill. App. 3d 898, 907, 493 N.E.2d 1130, 1136.) It is hard to distinguish between "considerable deference" and "substantial deference." In this case, the Board asks the court to adopt the standard for a particular type of determination: a decision by the Board on what constitutes a mandatory subject for collective bargaining.

In a recent case, this court stated the standard was simply "deference." (*Hardin County Education Association, IEA-NEA v. Illinois Educational Labor Relations Board* (1988), 174 Ill. App. 3d 168, 173-74, 528 N.E.2d 737, 740.) *Hardin County* is similar to the instant case in that the Board applied a new test to the facts therein. On appeal, the parties argued over which test was proper. This court held the test adopted by the Board was the proper one. *Hardin County*, 174 Ill. App. 3d at 178, 528 N.E.2d at 742.

The Board's expertise in educational labor matters must be given due consideration. Any other holding on our part would, for practical purposes, make appellate review of bargaining issues trial *de novo*. Such a result would appear to substitute our general knowledge and study for the expertise required of Board members by section 5 of the Act (Ill. Rev. Stat. 1987, ch. 48, par. 1705). We conclude considerable deference should be given the Board's decisions pertaining to mandatory bargaining subjects.

■ Class size is an element which obviously affects financial planning. The bargaining requirement may well create administrative problems, such as the need for additional teachers, or even additional buildings. The substantial fiscal problems faced by school boards must be a factor when determining whether class size should be subject to bargaining. At the same time, a teacher's work hours are definitely affected by class size. Classroom discipline require-

ments are subject to change based on the size of the class. It would appear that the amount of pressure on a teacher increases in proportion to the increase in class size.

Both sides cite authorities from foreign jurisdictions to support their arguments. At the same time, the parties attempt to distinguish the authorities which hold opposite to their positions. The fact is the authorities are divided.

The majority of the States which have examined the issue of class size find it to be a nonmandatory bargaining subject: *Kenai Peninsula Borough School District v. Kenai Peninsula Education Association* (Alaska 1977), 572 P.2d 416; *Hillsborough Classroom Teachers Association, Inc. v. School Board of Hillsborough County* (Fla. App. 1982), 423 So. 2d 969; *National Education Association of Shawnee Mission, Inc. v. Board of Education of Shawnee Mission Unified School District No. 512* (1973), 212 Kan. 741, 512 P.2d 426; *City of Biddeford By its Board of Education v. Biddeford Teachers Association* (Me. 1973), 304 A.2d 387; *School District of Seward Education Association v. School District of Seward* (1972), 188 Neb. 772, 199 N.W.2d 752; *In the Matter of West Irondequoit Teachers Association v. Helsby* (1974), 35 N.Y.2d 46, 315 N.E.2d 775, 358 N.Y.S.2d 709; *Springfield Education Association v. Springfield School District No. 19* (1976), 24 Or. App. 751, 547 P.2d 647; *Aberdeen Education Association v. Aberdeen Board of Education* (S.D. 1974), 215 N.W.2d 837; *Beloit Education Association v. Employment Relations Comm'n* (1976), 73 Wis. 2d 43, 242 N.W.2d 231.

The courts of three States have decided class size is a mandatory topic of collective bargaining: *West Hartford Education Association v. DeCourcy* (1972), 162 Conn. 566, 295 A.2d 526; *Boston Teachers Union, Local 66, American Federation of Teachers (AFL-CIO) v. School Committee of Boston* (1976), 370 Mass. 455, 350 N.E.2d 707; *Clark County School District v. Local Government Employee Management Relations Board* (1974), 90 Nev. 442, 530 P.2d 114.

Examining the case law from Pennsylvania leads to an inconclusive result. In *State College Education Association v. Pennsylvania Labor Relations Board* (1973), 9 Pa. Commw. 229, 306 A.2d 404, the Pennsylvania Commonwealth Court found class size to be a nonmandatory bargaining subject. However, the court expressed a very management-oriented interpretation of the Pennsylvania Public Employee Relations Act. Three members of the panel dissented in part, arguing class size had a direct effect on working conditions and should be considered a mandatory bargaining topic. The Pennsylva-

nia Supreme Court reversed the commonwealth court. (*Pennsylvania Labor Relations Board v. State College Area School District* (1975), 461 Pa. 494, 337 A.2d 262.) The supreme court rejected the narrow interpretation of employee rights and remanded the matter to the agency for further consideration under proper principles. As mentioned above, the supreme court adopted a balancing approach for resolving the overlap problem. The employer's rights provision of the Pennsylvania statute is very similar to section 4 of the Act. (Pa. Stat. Ann. tit. 43, §1101.702 (Purdon Supp. 1988).) The significant difference is that employers need not bargain collectively over policy matters that overlap into working conditions. They are required to "meet and discuss," which is a lesser obligation. See *Commonwealth v. Association of Pennsylvania State College & University Faculties* (1976), 24 Pa. Commw. 337, 355 A.2d 853.

We have indicated our concern relating to the fiscal problems of school districts, and we recognize that it is the responsibility of an administration to maintain a solvent district. We conclude, however, that these responsibilities and problems can be discussed in bargaining and may be decisive in a school district taking a firm position relating to class size. The Board's decision, given considerable deference by this court, is within the perimeters of its discretion. Classroom size is a mandatory issue for bargaining in Illinois.

For the reasons set forth in this opinion, we uphold the determination of the Board.

Affirmed.

KNECHT, J., concurs.

JUSTICE GREEN, concurring specially:

I concur in the decision to affirm the ruling of the Board and I agree with the adoption of the balancing test.

In applying the balancing test to determine whether class size is an issue for collective bargaining, the Board recognized that class size has a substantial effect on the quality of service rendered to pupils but that a decision on the question has "a more direct and significant effect on teachers' working conditions." (*Decatur School District No. 61*, 4 Pub. Employee Rep. (Ill.) par. 1076, case No. 86–CA–0042–S, at IX–323 (Illinois Educational Labor Relations Board, May 17, 1988).) Thus, the Board determined that reductions in class size confer more benefits upon the teachers than upon the pupils. I am willing to give substantial deference to the expertise of

the Board in making a determination of that nature.

I write separately (1) to emphasize the limits of this decision; (2) to discuss further the giving of "substantial deference" to Board decisions concerning matters upon which bargaining is required; and (3) to point out the severity of the burden which this decision places upon school districts.

The collective bargaining on class size requested here did not involve classes above the high school level. I do not interpret the order and opinion of the Board or the majority opinion to hold or indicate that educational employers engaged in providing programs in higher education are required to bargain over class size. Large classes obviously place a much greater burden on teachers at lower levels in maintaining discipline and giving individual attention to pupils than larger classes place upon college teachers. I would find any Board determination that determinations as to class size at the college level had a greater effect upon working conditions than upon the delivery of educational services to be clearly wrong and would not give such a determination deference. With the various ways available to conduct college classes, requiring bargaining as to class size would seem to place an unduly restrictive limitation upon college administration and deter innovation.

For the reasons explained, I am willing to give "substantial deference" to the Board's determination that at the primary and secondary levels, the issue of class size is primarily a working condition. We cannot foresee all of the questions which may arise in regard to what issues require bargaining or as to the mix of factual and legal questions which may be involved. We should not state or imply that we will always give substantial deference to a Board determination on these questions, particularly in view of the fact that we may not always be able to do so properly.

The burden which the decision places upon school districts seems to me to be more than the majority recognizes. The record indicates the parties have already had substantial discussions in regard to the question. The duty now imposed to bargain in good faith on the question requires much more than discussion. As pointed out in the dissent of Board member Randi Hammer Abramsky to the Board's opinion and order, the decision limits school districts in "effectuating any change in structural methodology (*e.g.*, team teaching, lecture format) for the duration" of a contract. (*Decatur School District No. 61*, 4 Pub. Employee Rep. (Ill.) par. 1076, case No. 86—CA—0042—S, at IX—326 (Board member Abramsky, dissenting).) Board member Abramsky also explains that, unlike bargaining on salaries, bargain-

ing on class size may involve the necessity of providing further building space. For these reasons, she would limit bargaining on class size to impact bargaining aimed at compensating teachers for the added burdens placed upon them when class sizes are increased. She also explains that the foregoing factors are the reasons why most States have apparently determined that public school districts are not required to bargain as to class size.

SUPPLEMENTAL OPINION ON DENIAL OF REHEARING

JUSTICE LUND delivered the opinion of the court:

On petition for rehearing, the Decatur Education Association, IEA-NEA, faults the following statement included in our opinion:

"The Board members all agree that a finding of direct effect, under the second sentence of section 4, did not automatically result in mandatory bargaining. The Board adopted a balancing test whereby, after finding a direct effect exists, the interests of the employees are weighed against the School District's interest in maintaining unencumbered control over the managerial policy. This same balancing test could be used in determining when the impact of a particular policy decision would be subject to bargaining." 180 Ill. App. 3d at 772-73.

The decision of the Illinois Educational Labor Relations Board (IELRB) in this cause included the following statement:

"The IELRA itself, however, contains the answer to this problem [where a given subject is arguably both a term and condition of employment and a reserved managerial prerogative]. It provides that those policy matters 'directly affecting wages, hours and terms and conditions of employment' must be bargained. In *Berkeley*, we said that 'policy matters directly affecting wages, hours and terms and conditions of employment' are those policies that have 'wages, hours and terms and conditions of employment as their primary subject ***' [*Berkeley School District No. 87*, 2 Pub. Employee Rep. (Ill.) par. 1066, No. 84—CA—0057—C (Illinois Educational Labor Relations Board, May 30, 1986).] When a given subject is both a term and condition of employment and a managerial prerogative, the question becomes how to determine if a policy has 'wages, hours and terms and conditions of employment as [its] primary subject' under *Berkeley*. We believe that such policies should be identified by using a balancing test." *Decatur School District No. 61*, 4 Pub. Employee Rep. (Ill.)

par. 1076, No. 86—CA—0042—S, at IX—322 (Illinois Educational Labor Relations Board; May 17, 1988).

In the opinion and order of the IELRB in *Central City School District No. 133*, 5 Pub. Employee Rep. (Ill.) par. ___, No. 87—CA—0018—S, at ___n.5 (Illinois Educational Labor Relations Board, Mar. 2, 1989) (Opinion and Order), the following footnote was included:

"In *Decatur School District No. 61 v. IELRB, supra,* the Appellate Court stated in passing that the IELRB balances the competing interests 'after finding a direct effect exists' (i.e., that a policy decision directly affects wages, hours and terms and conditions of employment). Rather, we balance the competing interests only after determining that a given subject is both 'wages, hours, and terms and conditions of employment' and a matter of educational policy. We then apply our balancing test to determine if the policy matter 'directly affects(s) wages, hours and terms and conditions of employment' within the meaning of the second sentence of Section 4 of the Act. We also note that the Court stated in dicta that '[t]his same balancing test could be used in determining when the impact of a particular policy decision would be subject to bargaining' (Slip Op. at 3). Rather, Section 4 of the Act expressly requires that impact be bargained, upon request, regardless of whether the decision itself is subject to mandatory collective bargaining."

We recognize a problem of semantics may be involved. However, our interpretation of legislative intention is final unless changed by our supreme court. Unless so changed, our opinions are to be followed by the IELRB.

■ The conflicts arising between section 10(a) of the Illinois Educational Labor Relations Act (Act) (Ill. Rev. Stat. 1987, ch. 48, par. 1710(a)), which is entitled "Duty to bargain" and section 4 of the Act (Ill. Rev. Stat. 1987, ch. 48, par. 1704), which is entitled "Employer rights," are apparent. Some employment policies, which in the common use of the English language would be said to directly affect conditions of employment, are so intertwined with matters of inherent managerial policy as to be beyond the right of bargaining. The IELRB would judge conflicts by determining whether the policy has wages, hours, and terms and conditions of employment as its primary subject. The IELRB professes to make this determination by the use of a balancing test.

Section 10(a) and section 4 illustrate the conflicting interests

considered at the time of legislative enactment. In attempting to placate the conflicting interests, something less than perfection resulted. Our responsibility is to add some responsible and, hopefully, some understandable interpretation to the seemingly conflicting statutory provisions.

■ We withdraw our statement as to the use of the balancing test in regard to determining whether impact is subject to bargaining. However, nothing contained in this opinion should be taken to indicate that all cases, where impact is present, are subject to bargaining.

KNECHT and GREEN, JJ., concur.