BOARD OF REGENTS OF REGENCY UNIVERSITIES, Petitioner, v. IL-
LINOIS EDUCATIONAL LABOR RELATIONS BOARD *et al.*, Respond-
ents.—BOARD OF GOVERNORS OF STATE COLLEGES AND UNIVER-
SITIES, Petitioner, v. ILLINOIS EDUCATIONAL LABOR RELATIONS
BOARD *et al.*, Respondents.—BOARD OF TRUSTEES OF SOUTHERN IL-
LINOIS UNIVERSITY AT CARBONDALE AND EDWARDSVILLE, Peti-
tioner, v. ILLINOIS EDUCATIONAL LABOR RELATIONS BOARD *et al.*,
Respondents.

Fourth District   Nos. 4—89—0187, 4—89—0188, 4—89—0202 cons.

Opinion filed April 5, 1990.

Richard J. Coffee II, of Sangamon State University, of Springfield, for petitioner Board of Regents of Regency Universities.

Edward B. Miller and James A. Spizzo, both of Pope, Ballard, Shepard

& Fowle, Ltd., of Chicago, for other petitioners.

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and William D. Frazier, Assistant Attorney General, of Chicago, of counsel), for respondent Illinois Educational Labor Relations Board.

Gilbert A. Cornfield and Gale E. Mrozowski, both of Cornfield & Feldman, of Chicago (Jacqueline A. Kinnaman, of American Federation of State, County and Municipal Employees, of counsel), for respondent American Federation of State, County and Municipal Employees.

JUSTICE STEIGMANN delivered the opinion of the court:

This case comes to us on petition for administrative review of a decision of the Illinois Educational Labor Relations Board (IELRB). (*University of Illinois Board of Trustees*, 5 Pub. Employee Rep. (Ill.) par. 1035, No. 86—CA—0087—C (Illinois Educational Relations Board, Feb. 2, 1989).) The IELRB held the rescission of a seniority rule by the University Civil Service System Merit Board (Merit Board) was the subject of mandatory bargaining by the petitioners, universities subject to the University Civil Service System. We find the rescission of the rule was not subject to the mandatory bargaining provisions of the Illinois Educational Labor Relations Act (Act) and reverse the decision of the IELRB. Ill. Rev. Stat. 1985, ch. 48, par. 1701 *et seq.*

On September 16, 1986, the Merit Board proposed the deletion of section 250.50(b)(8) of its rules relating to service bonus points (80 Ill. Adm. Code §250.50(b)(8) (1985)). Service bonus points were awarded to university employees on the basis of seniority when they sought employment within the university in a different job classification than the one in which they were currently employed. Employees in this situation were required to compete with other prospective employees in a competitive examination and selection process. However, employees with seniority were awarded one additional point on their examination scores for each year of employment by the university, up to a maximum of 10 points. These points provided a substantial advantage to current employees when seeking to change their career track within the university where they were employed.

The American Federation of State, County, and Municipal Employees (AFSCME) sent the petitioners letters demanding the universities and the Merit Board bargain over the proposed rule change. All of the petitioners and the Merit Board refused to bargain over the proposed rule change. The Merit Board contended it was an indepen-

dent third party and was not an employer for the purposes of the Act. It argues it had no duty to bargain over its proposed rule change. Each of the universities individually responded with a number of contentions as to why they were not required to bargain based on their individual circumstances.

On October 20, 1986, AFSCME filed an unfair labor practice charge against the Merit Board and the University of Illinois as joint employers. On November 12, 1986, AFSCME amended its unfair labor practice charge to add the petitioners to the Merit Board and the University of Illinois. A public hearing on the proposed rule change was held by the Merit Board on November 18, 1986. On April 6, 1987, the Merit Board approved the rescission of the seniority bonus points rule.

The IELRB investigated the charge filed by AFSCME and issued a complaint for hearing. The parties stipulated to the facts and exhibits. This matter was presented directly to the IELRB. The IELRB issued its order on February 2, 1989. (*University of Illinois Board of Trustees*, 5 Pub. Employee Rep. (Ill.) par. 1035, No. 86—CA—0087—C (Illinois Educational Labor Relations Board, Feb. 2, 1989).) The IELRB rejected the assertion that the Merit Board and the petitioners were joint employers of the employees in question and dismissed the complaint as to the Merit Board. It found all the universities but the University of Illinois had refused to bargain over the rule change and that this constituted a violation of the Act on the part of those universities. The IELRB found the petitioners had a duty to bargain with regard to the proposed change in the Merit Board rule, but that any provisions negotiated were subject to approval or rejection by the Merit Board. AFSCME appealed the IELRB's ruling that the Merit Board was not a joint employer, which ruling this court has affirmed this date. (*American Federation of State, County & Municipal Employees v. Illinois Educational Labor Relations Board* (1990), 197 Ill. App. 3d 521.) Petitioners brought this appeal, challenging those portions of the IELRB determination which were adverse to them.

■ We begin our analysis with an examination of the statutory framework which structures educational labor relations in this State. Essential to our inquiry are sections 10(a) and 4 of the Act, which set out those areas subject to mandatory bargaining. (Ill. Rev. Stat. 1985, ch. 48, pars. 1710(a), 1704.) Section 10(a) provides the mandatory topics of collective bargaining are wages, hours, and other terms and conditions of employment. Section 4 provides in relevant part:

> "Employer rights. Employers shall not be required to bargain over matters of inherent managerial policy, which shall include

such areas of discretion or policy as the functions of the employer, standards of services, its overall budget, the organizational structure and selection of new employees and direction of employees. Employers, however, shall be required to bargain collectively with regard to policy matters directly affecting wages, hours and terms and conditions of employment as well as the impact thereon upon request by employee representatives." Ill. Rev. Stat. 1985, ch. 48, par. 1704.

■ The respondents have also drawn our attention to section 36d of "An Act to create the State Universities Civil Service System" (Civil Service Act) (Ill. Rev. Stat. 1985, ch. 24½, par. 38b3). This section provides in part:

"Each employer covered by the University System shall be authorized to negotiate with representatives of employees to determine appropriate ranges or rates of compensation or other conditions of employment and may recommend to the Merit Board for establishment the rates or ranges or other conditions of employment which the employer and employee representatives have agreed upon as fair and equitable." Ill. Rev. Stat. 1985, ch. 24½, par. 38b3(3).

■ The respondents read these sections in conjunction to require that an employer be compelled to make a given recommendation reached as a result of mandatory bargaining. To the extent that the IELRB's order mandates a recommendation to the Merit Board, we find this to be contrary to the language of section 36d of the Civil Service Act. Statutory sections concerning the same subject matter should be construed and considered with reference to each other so that all sections may be given a harmonious effect. (*Department of Revenue v. Smith* (1986), 150 Ill. App. 3d 1039, 501 N.E.2d 1370.) If two statutes can be reconciled so that both can be given effect, the courts must so construe them. *Rosehill Cemetery Co. v. Lueder* (1950), 406 Ill. 458, 94 N.E.2d 342.

■ Section 36d of the Civil Service Act is primarily an enabling clause authorizing the Merit Board to carry out a number of assigned tasks. *Inter alia*, it authorizes employers to negotiate with employee representatives concerning compensation and other conditions of employment. It also provides the employer "may recommend" compensation or other conditions of employment to the Merit Board. First, we note this section authorizes the recommendation only of mutually agreed terms and conditions of employment. Such mutual agreement is achieved by negotiations carried out with reference to the Civil Service Act, which we discuss in greater detail below. Second, we find

the use of the expression "may recommend" makes clear the legislative intent that an employer make recommendations to the Merit Board as an exercise of its discretion. To suggest, as the IELRB did and as the respondents continue to urge us to do, that the petitioners are compelled to recommend to the Merit Board whatever results from negotiations over even mandatory subjects of bargaining is to render the discretionary language of section 36d of the Civil Service Act void. By imposing a duty where the legislature has only authorized the exercise of discretion, we would violate the clearly expressed intent of the legislature.

We find it more in keeping with the statutory scheme to hold that no recommendation from an employer to the Merit Board can be mandated. Bargaining, which may be mandated, and the recommendations, which may not, are two separate matters. We recognize that as a practical matter employers will often make recommendations to the Merit Board which are the direct result of their negotiations with the employee representatives. This fact, however, does not alter the legislative grant of discretion to the employer. The IELRB overstepped its statutory authority to the extent that its order requires a mandated recommendation.

Reaching this conclusion does not, however, dispose of the case before us. The IELRB order found the rule change here was the subject of mandatory bargaining. The IELRB has the authority to determine and compel mandatory bargaining under the Act. The IELRB found the service bonus points rule was essentially connected to promotion and, as such, was a condition of employment. For this reason, the IELRB determined mandatory bargaining was required.

■■ ■ Our review of the record indicates the finding of the IELRB in regard to this issue was contrary to the manifest weight of the evidence. Nothing in the record suggests the bonus points were used in any manner when employees were selected for promotion, and counsel for AFSCME conceded this at oral argument. The testimony presented before the Merit Board indicated the bonus points were helpful to employees who wished to move from one job classification to another in order to seek higher wages or enhanced employment opportunities. There was no evidence that these lateral moves could be characterized as promotion or that bonus points affected promotions within the job classifications in any way. Courts may not interfere with the discretionary authority vested in an administrative agency unless that authority is exercised in an arbitrary or capricious manner or the administrative decision is contrary to the manifest weight of the evidence. (*Hardin County Education Association, IEA-NEA v. Il-*

*linois Educational Labor Relations Board* (1988), 174 Ill. App. 3d 168, 528 N.E.2d 737.) A decision is contrary to the manifest weight of the evidence only when, after viewing the evidence in the light most favorable to the administrative agency, the court determines that no rational trier of fact could have agreed with the agency's decision. *Service Employees International Local Union No. 316 v. Illinois Educational Labor Relations Board* (1987), 153 Ill. App. 3d 744, 505 N.E.2d 418.

■ In reaching its decision, the IELRB employed a balancing test. This test was recently upheld in *Decatur Board of Education, District No. 61 v. Illinois Educational Labor Relations Board* (1989), 180 Ill. App. 3d 770, 536 N.E.2d 743. This court in that case recognized the Act creates a broad "gray area." While some issues are clearly subject to mandatory bargaining, the status of others is less clear. If a given issue is not clearly a matter of mandatory bargaining, the IELRB then determines whether the issue has a direct effect on the terms and conditions of employment. When there is such an effect, the interests of the employees are weighed against the employer's interest in maintaining managerial control in that area.

■ Here, the IELRB found the rescission of the rule did affect the terms and conditions of employment. It then applied the balancing test and found the employees' interest outweighed the management's interest in maintaining managerial discretion over promotion. We believe that but for this mistaken finding of fact, the IELRB would not have reached the balancing test and would not have found the rescission was a subject for mandatory bargaining.

We reach this conclusion after a careful consideration of the Act's purpose and language. As this court noted in *Decatur Board of Education, District No. 61*, the Act creates a gray area where the IELRB may properly exercise its discretion to determine whether a given issue is the subject of mandatory bargaining. Section 4 of the Act also reserves certain areas which are the exclusive domain of the employer. Though the Act does not attempt to provide an exhaustive list of all of the areas, several are enumerated as examples of areas where inherent managerial policy will preclude mandatory bargaining. These include the functions of the employer, standards of services, overall budget, the organizational structure, and the selection of new employees.

Here, the IELRB'S mistaken finding of fact caused it to overlook one of the categories specifically reserved as concerning inherent managerial policy, the selection of new employees. The evidence showed the bonus points had an impact upon the selection and hiring

of employees for open positions in the university system. The primary purpose in the rule rescission, as indicated by the Merit Board, was to increase the flexibility which the universities had in selecting new employees. The existing rule had the effect of eliminating outside hiring in certain job classifications. We find the evidence indicated the bonus points rule was primarily related to the selection of new employees. Under section 4 of the Act, this is clearly a matter of inherent management policy exempt from mandatory bargaining requirements. The IELRB's misapprehension of the evidence here led it to conclude, incorrectly, that the issue was promotion. If correct, the IELRB would have properly found an impact on the terms and conditions of employment. It could then have proceeded to employ the balancing test, which it did here.

The evidence showed the bonus points rule related most closely to the selection of employees by the universities. While we would normally accord great deference to the factual findings of a State agency, when those findings are clearly erroneous and the agency's ultimate conclusions of law are premised on these mistaken findings, we cannot permit them to stand. Here the evidence showed that employees with seniority did not have a right to a position in another job classification, they were merely given an advantage in competing with members of the general public for open positions. The selection of new employees is one of the areas the legislature specifically reserved as an inherent management function. This selection cannot be made the subject of mandatory bargaining. The impact of the bonus points rule on the terms and conditions of employment was marginal at best. It did not affect wages, benefits, or promotions. It did have a major impact on the ability of the employers to select employees. This is a matter over which the legislature has clearly given the employer great discretion. The IELRB completely overlooked this mandate when it made its decision and for this reason we must reverse.

The decision of the IELRB is reversed.

Reversed.

KNECHT, P.J., and McCULLOUGH, J., concur.