WEST CHICAGO SCHOOL DISTRICT No. 33, Petitioner-Appellant, v. IL-
LINOIS EDUCATIONAL LABOR RELATIONS BOARD *et al.*, Respond-
ents-Appellees.

First District (3rd Division)   No. 1—89—1429

Opinion filed August 7, 1991.

Robbins, Schwartz, Nicholas, Lifton & Taylor, Ltd., of Chicago (Fred B. Lifton and Michael J. Foley, of counsel), for petitioner.

Roland W. Burris, Attorney General, of Springfield (William D. Frazier, Assistant Attorney General, of Chicago, of counsel), for respondent Illinois Educational Labor Relations Board.

Winston & Strawn, of Chicago (Gregory J. Malovance and Rex L. Sessions, of counsel), for respondent Elementary Teachers' Association of West Chicago.

JUSTICE RIZZI delivered the opinion of the court:

Petitioner West Chicago School District No. 33 (School District) appeals on direct administrative review from an order of respondent Illinois Educational Labor Relations Board (IELRB) holding that School District violated sections 14(a)(1) and 14(a)(5) of the Illinois Educational Labor Relations Act (Ill. Rev. Stat. 1987, ch. 48, par. 1701 *et seq.*) by refusing to bargain in good faith over changes in teacher compensation, workload, and preparation time. On review, School District contends that the IELRB erred when it concluded that (1) School District's actions constituted changes in mandatory subjects of bar-

gaining; and (2) respondent Elementary Teachers' Association of West Chicago, IEA-NEA (Association), did not waive its right to bargain over the subjects in issue. We affirm.

Association is the exclusive bargaining representative of a unit of professional certificated personnel employed by School District. School District and Association have been parties to nine collective bargaining agreements from 1972 through 1989. Beginning in the spring of 1986, School District imposed various changes in the terms and conditions of employment of represented teachers, including the establishment of eight in-service training days, the addition of certain classes to the following school year's schedule, and changes in the compensation provided for curriculum writing, summer school teaching, test scoring, and membership in the "Building Leadership Team" and "Science of Teaching" Cadre.

Association demanded to bargain with School District regarding the various changes instituted by School District's board, but School District refused to bargain on any of these subjects, asserting that Association had waived its right to bargain during the term of the parties' collective bargaining agreement pursuant to Articles XV(A) and (E) of that agreement.[1] In the fall of 1986, additional changes were instituted by School District, including the addition of certain classes and a decrease in the teachers' class planning time. Again, Association issued a demand to bargain with School District, and School District again refused.

On September 5, 1986, Association filed unfair labor practice charge No. 86—CA—0061—C against School District with the IELRB, alleging that School District had violated sections 14(a)(1) and 14(a)(5) of the Educational Labor Relations Act (Act) by failing to bargain with Association regarding the various changes unilaterally instituted by School District. (Ill. Rev. Stat. 1987, ch. 48, pars. 14(a)(1), (a)(5).) On February 13, 1987, Association filed unfair labor practice charge No. 87—CA—0002—C with the IELRB, alleging that School District

---

[1] "ARTICLE XV—Effect of Agreement

A. The terms and conditions set forth in this Agreement represent the full and complete understanding and commitment between the parties hereto. The terms and conditions of this Agreement may be modified by alteration, change, addition to, or deletion only through the voluntary, mutual consent of the parties in written amendment executed in accordance with the provisions of this Agreement.

* * *

E. The parties acknowledge that they have had the opportunity to negotiate all items not removed by law, and therefore, each waives the right to negotiate any other subject during the term of this Agreement, except by mutual consent."

had violated sections 14(a)(1) and 14(a)(5) of the Act by refusing to bargain in good faith over changes in working conditions. Ill. Rev. Stat. 1987, ch. 48, pars. 14(a)(1), (a)(5).

On July 10, 1987, the IELRB issued a complaint in case No. 87—CA—0002—C. School District filed a timely answer to the complaint. On August 13, 1987, the IELRB issued a complaint in case No. 86—CA—0061—C, and consolidated it with case No. 87—CA—0002—C. School District did not file an answer to this complaint.

At a hearing held on October 5, 1987, the hearing officer concluded that School District's failure to file a timely answer to the complaint in case No. 86—CA—0061—C constituted an admission of all material facts contained within the complaint. On October 8, 1987, the hearing officer certified that there were no determinative issues of fact that required his recommended decision and ordered the matter removed to the IELRB for decision.

On May 2, 1989, the IELRB ruled that School District had violated sections 14(a)(1) and 14(a)(5) of the Act by refusing to bargain in good faith over the changes unilaterally instituted by School District. In so ruling, the IELRB held that the changes in question constituted mandatory subjects of bargaining, and that the parties had not waived the right to further bargaining by the terms and conditions of their collective bargaining agreement. On June 2, 1989, School District appealed directly to this court from the May 2, 1989, order.

■ Before addressing the merits of this case, we must first determine whether this court has jurisdiction to consider this appeal. School District filed its petition for review on June 2, 1989, 31 days after the IELRB's decision. The IELRB contends that this court is without jurisdiction to hear this appeal because School District filed its petition for review after the 30-day filing period promulgated by Supreme Court Rule 303(a) (134 Ill. 2d R. 303).

The IELRB cites *County of Cook v. Illinois Local Labor Relations Board* (1989), 189 Ill. App. 3d 1057, 1059-62, 551 N.E.2d 229, 231-32, where the first district held that the 30-day filing period set forth in Supreme Court Rule 303(a) governed direct appellate court review of IELRB orders, rather than the 35-day filing period set forth in section 3—103 of the Administrative Review Law (Ill. Rev. Stat. 1987, ch. 110, par. 3—103). Recently, the first district in *Central City Education Association v. Illinois Educational Labor Relations Board* (1990), 199 Ill. App. 3d 559, 563, 557 N.E.2d 418, 421, and the fourth district in *Board of Regents of Regency Universities v. Illinois Educational Labor Relations Board* (1991), 208 Ill. App. 3d 220, 228-29, 566 N.E.2d 963, 969, held that a petition for review filed within

35 days after an IELRB order was issued was timely filed on the grounds that the appellant should not be penalized for relying upon recent decisions which either implicitly suggested or expressly held that the 35-day filing period in the Administrative Review Law is applicable for review of administrative agency decisions. (See *American Federation of State, County & Municipal Employees, Council 31 v. State Labor Relations Board* (4th Dist. 1990), 196 Ill. App. 3d 238, 553 N.E.2d 415; *Board of Education of Jacksonville, School District No. 117 v. Illinois Educational Labor Relations Board* (4th Dist. 1989), 183 Ill. App. 3d 972, 539 N.E.2d 882; *Hardin County Educational Association v. Illinois Educational Labor Relations Board* (4th Dist. 1988), 174 Ill. App. 3d 168, 528 N.E.2d 737; *City of Benton Police Department v. Human Rights Comm'n* (5th Dist. 1986), 147 Ill. App. 3d 7, 497 N.E.2d 876.) Petitions for leave to appeal were granted by the Illinois Supreme Court for both *Cermak* and *Central City*, and both cases have been taken under advisement. *County of Cook*, 131 Ill. 2d 558, 553 N.E.2d 394 (argued November 28, 1990); *Central City*, 133 Ill. 2d 553, 561 N.E.2d 687 (argued March 20, 1991).

Under the circumstances, we see no reason to again express the reasons stated in recent appellate court opinions whether the 30-day or 35-day filing period should apply for direct appellate review of administrative agency decisions. We believe it is sufficient to merely state our conclusion that we have jurisdiction to decide the merits of this appeal.

School District's first contention on review is that the IELRB erred when it concluded that School District's actions constituted changes in subjects requiring mandatory bargaining. School District argues that any actions that it took as employer were actions that maintained the status quo, and should not be considered changes at all. Accordingly, School District contends that maintaining the status quo did not require mandatory bargaining under the Act. We disagree.

■ A respondent to an unfair labor practice complaint must file an answer within 15 days after service of the complaint, and any failure to file a timely answer will be deemed to be an admission to the material facts in the complaint. (13 Ill. Reg. §1120.30(d) (1989).) School District, by virtue of its failure to answer the complaint in case No. 86—CA—0061—C, has admitted that the instituted changes did not maintain the status quo. Then, the issue remains as to whether those changes involved subjects requiring mandatory bargaining.

■ In *Decatur Board of Education, District No. 61 v. Illinois Educational Labor Relations Board* (1989), 180 Ill. App. 3d 770, 536 N.E.2d 743, the appellate court affirmed the IELRB's adoption of a balancing test to determine whether an action taken by an employer involves a mandatory subject of bargaining. The balancing test is essentially a three-part test.

Section 10(a) of the Act provides that changes affecting wages, hours, or terms and conditions of employment are mandatory topics of collective bargaining. (Ill. Rev. Stat. 1987, ch. 48, par. 1710(a).) Part I of the balancing test determines whether the action taken by the employer directly or indirectly involves one of the mandatory subjects of bargaining set forth in section 10(a) of the Act.

Section 4 of the Act specifically denotes that employers do not have to bargain over matters of inherent managerial policy, which the Act enumerates to include such areas of discretion or policy as the functions of the employer, standards of services, its overall budget, the organizational structure and selection of new employees and direction of employees. (Ill. Rev. Stat. 1987, ch. 48, par. 1704.) Part II of the balancing test determines whether the action taken by the employer is a matter of inherent managerial policy as defined in section 4 of the Act.

Part III of the balancing test applies only if the action taken by the employer involves both a mandatory subject of bargaining under part I of the test and a matter of inherent managerial policy under part II of the test. If both a section 10 employee right and a section 4 employer right exist, then the IELRB must balance the employees' right to bargain with the policy of protecting the employers' inherent managerial rights and determine whose interests are more at risk. See *Decatur Board of Education*, 180 Ill. App. 3d at 773-77, 536 N.E.2d at 745-48; see also *American Federation of State, County & Municipal Employees v. Illinois State Labor Relations Board* (1989), 190 Ill. App. 3d 259, 546 N.E.2d 687 (AFSCME); accord *Board of Education, LeRoy Community Unit School District No. 2 v. Illinois Educational Labor Relations Board* (1990), 199 Ill. App. 3d 347, 556 N.E.2d 857.

■ The IELRB applied the three-part test to the actions taken by School District. Applying part I, the IELRB determined that the unilateral changes instituted by School District constituted changes in subjects requiring mandatory bargaining as defined in section 10(a) of the Act. This finding is not contrary to the manifest weight of the evidence. The establishment of in-service days, addition of certain classes to the schedule, and pay adjustments for extracurricular acti-

vities all clearly fall within the definition of "wages, hours and terms and conditions of employment" set forth in section 10(a) of the Act.

Applying part II of the balancing test, the IELRB concluded that the changes instituted by School District were not changes which involved an inherent managerial right as defined under section 4 of the Act. This finding is also not contrary to the manifest weight of the evidence. The establishment of in-service days, addition of certain classes to the schedule, and pay for extracurricular activities do not involve matters of critical importance to management, such as standards of services, the overall budget, the organizational structure, the selection of new employees, the direction of employees, or any other inherent managerial right.

Part III of the balancing test, which applies only when conflicting interests exist between section 10 employees' rights and section 4 employers' rights, is inapplicable in this case because the changes instituted by School District did not include changes involving inherent managerial rights under section 4 of the Act.

The IELRB concluded that School District, by virtue of section 10(a) of the Act, must give notice and opportunity to Association to bargain any of the changes made, and that School District's refusal to engage in midterm bargaining over these items was a violation of sections 14(a)(1) and 14(a)(5) of the Act. We hold that the IELRB's conclusion is consistent with the evidence presented. The changes instituted by School District certainly do not maintain the status quo as School District argues, and clearly fall within the definition set forth in section 10(a) of the Act for subjects requiring mandatory bargaining.

School District's second contention on review is that even if mandatory bargaining was required for any of the changes instituted, Association waived its right to bargain by virtue of Articles XV(A) and (E) of the collective bargaining agreement. We disagree.

The parties' collective bargaining agreement contains an express provision which defines the requirements for modification, change, alteration or deletion of terms of the contract, and a waiver of the parties' right to negotiate all items not removed by law during the term of the contract.[2]

■■ When parties have fully bargained a mandatory subject of bargaining or have reached an agreement which is incorporated into

---

[2]See footnote 1 for the full text of Articles XV(A) and (E) of the parties' collective bargaining agreement.

the collective bargaining agreement, the parties may waive further bargaining. (See generally *East Richland Education Association v. Illinois Educational Labor Relations Board* (1988), 173 Ill. App. 3d 878, 528 N.E.2d 751.) However, a midterm bargaining obligation may continue for items which are not fully bargained or set forth in the agreement. (*Board of Education, LeRoy Community Unit School District No. 2 v. Illinois Educational Labor Relations Board* (1990), 199 Ill. App. 3d 347, 365, 556 N.E.2d 857, 868.) In order for a contractual waiver to be found, the language of the agreement in light of any evidence presented on bargaining history must demonstrate a "clear and unmistakable" agreement to waive midterm bargaining. See *AFSCME*, 190 Ill. App. 3d at 269, 546 N.E.2d at 694; *Board of Education, LeRoy Community Unit School District No. 2*, 199 Ill. App. 3d at 366, 556 N.E.2d at 869.

■ The IELRB held in this case that the waiver clause, which is commonly referred to as a "zipper clause," is not all-encompassing, and that Association could not have waived its bargaining rights regarding the disputed issues during precontract negotiations since the nature of the changes was then unknown. This finding is not contrary to the manifest weight of the evidence.

The waiver clause at issue states that the parties waive the opportunity to negotiate all items *not removed by law*. Thus, if the action taken by the employer was not a subject of mandatory bargaining covered by the Act, then the item undoubtedly would be waived. However, the plain language of Article XV states that the parties do not waive the right to bargain subjects that are covered by law such as those present in this case.

School District does not rely on any extrinsic evidence to support a claim that the language of the clause should be construed to provide for such a waiver. The record reflects that at the time the instant waiver clause was negotiated, Association did not intend to relinquish its midterm bargaining rights. Moreover, the bargaining history demonstrates that Association would not agree to any such waiver.

The waiver clause in this case is almost identical to the waiver clause found in *Board of Education, LeRoy Community Unit School District No. 2*, 199 Ill. App. 3d at 366, 556 N.E.2d at 869, where the court held that the language of the clause did not demonstrate a "clear and unmistakable" waiver of the right to further bargaining. The plain language of the waiver clause in this case, while clearly precluding the opportunity for additional negotiation on items not removed by law, does not waive the right of the parties to further bargain any items removed by law. We therefore hold that the clause at

issue does not contain the "clear and unmistakable" language necessary to constitute a waiver of its right to bargain over the subjects at issue.

Accordingly, the decision of the Illinois Educational Labor Relations Board is affirmed.

Affirmed.

CERDA, P.J., and WHITE,* J., concur.