SHERRARD COMMUNITY UNIT SCHOOL DISTRICT NO. 200, Petitioner, v. THE ILLINOIS EDUCATIONAL LABOR RELATIONS BOARD *et al.*, Respondents.

Fourth District   No. 4—97—0536

Argued April 15, 1998.—Opinion filed June 15, 1998.

S. Jeff Funk (argued) and J. Christian Miller, both of Miller, Tracy, Braun, Funk & Paisley, Ltd., of Monticello, for petitioner.

James E. Ryan, Attorney General, of Chicago (Barbara A. Preiner, Solicitor General, and Karen J. Dimond (argued), Assistant Attorney General, of counsel), for respondent Illinois Educational Labor Relations Board.

Robert P. Lyons (argued), of Illinois Education Association, of Chicago, and Mitchell Roth, of Illinois Education Association, of Springfield, for respondent Sherrard Education Association.

JUSTICE GREEN delivered the opinion of the court:

The dispute giving rise to this case resulted from the action of petitioner, Sherrard Community Unit School District No. 200 (District), when, after formulating a plan to realign student attendance at four grade schools, it reassigned some 14 teachers to different schools for the ensuing school year. One of those teachers, Scharm Schneck, objected and on May 25, 1995, was permitted to appear before a closed meeting of the District's Board of Education (Board) and persuaded the Board to allow her to remain and to select another teacher for reassignment. Respondent, Sherrard Education Associa-

tion IEA-NEA (Association), was the duly elected exclusive representative of the teachers employed by the District, but Schneck appeared before the Board without being accompanied by a representative of the Association.

On July 14, 1995, the Association filed an unfair labor practice charge against the District with the Illinois Educational Labor Relations Board (IELRB). After an investigation, IELRB's acting director issued a complaint on February 1, 1996, charging the District with directly negotiating with Schneck concerning a subject of mandatory bargaining (her involuntary transfer), in violation of section 14(a)(5) and derivatively section 14(a)(1) of the Illinois Educational Labor Relations Act (Act) (115 ILCS 5/14(a)(5), (a)(1) (West 1994)), by failing to bargain collectively with the Association concerning the reassignment of teachers. Section 14(a)(5) of the Act makes refusing to bargain collectively in good faith with the exclusive representative of educational employees an unfair labor practice. Section 14(a)(1) makes interference by employers with the rights of employees granted by the Act an unfair labor practice. Thus, a violation of section 14(a)(5) is also a violation of section 14(a)(1).

On June 13, 1996, the parties stipulated to the facts and waived oral argument. On October 28, 1996, an administrative law judge (ALJ) for the IELRB entered a recommended decision and order finding the District did not violate the Act. The Association then filed exceptions before the IELRB. On May 15, 1997, the IELRB issued a decision rejecting the ALJ's recommended decision and found the District had violated the Act in bypassing the Association and negotiating directly with Schneck over her involuntary transfer, a matter the IELRB deemed, under the particular circumstances, was a subject of mandatory bargaining under the Act, thus requiring the Association's participation. The District has taken administrative review to this court pursuant to section 16(a) of the Act. 115 ILCS 5/16(a) (West 1994). We affirm.

The parties stipulate that (1) the teachers of the District, the Association, and the District are educational employees, an employee organization, and an educational employer, respectively, within the meaning of the Act (115 ILCS 5/2(a) through (c) (West 1994)); (2) the Association is the exclusive representative of the District's teachers; (3) since 1980, the parties have entered into several collective-bargaining agreements; (4) during the 1994-95 school year, the District developed a plan to realign students' attendance in four of its elementary schools, thus requiring some reassignment of teachers; (5) Schneck taught at a school where a reduction in the number of teachers would be required; (6) in May 1995, the District's adminis-

tration recommended that 14 teachers, including Schneck, be reassigned; (7) the reassignment of Schneck would have caused her salary to be reduced by $1,982 per year because she would no longer be a "head teacher"; and (8) Schneck was not a member of the Association.

The following underlying agreed facts in regard to the episode at the heart of the dispute are as follows. In May 1995, Schneck contacted her school principal to object to the transfer and he advised her the District's Board had not yet made any final assignments. He further advised Schneck that under section 10—16 of the School Code (105 ILCS 5/10—16 (West 1994)) and the Board's policy, she had a right to address the Board. Section 10—16 states, in part:

> "At each regular and special meeting [of the Board] which is open to the public, members of the public *and employees of the district* shall be afforded time, subject to reasonable constraints, to comment to or ask questions of the board." (Emphasis added.) 105 ILCS 5/10—16 (West 1994).

The agreed evidence further showed conclusively that (1) at the May 25, 1995, Board meeting, Schneck requested and was granted leave to meet with the Board in a closed session; (2) at that meeting, she advised the Board that if she was transferred she would lose her head teacher's stipend and she had more seniority than any other teacher who might be transferred; (3) following the meeting, the Board decided not to transfer her; (4) another teacher, Debbie Youngblood, was selected for transfer; (5) if Schneck had been transferred, no teacher at the school she would be leaving would have had experience as a head teacher; (6) Schneck had more seniority than Youngblood; (7) if transferred, Schneck would have been the only teacher to lose a portion of her salary; and (8) the District and the Association have never bargained over an individual teacher's assignment.

At all times pertinent, article II, paragraph L, of the collective-bargaining agreement between the Association and the District provided as follows:

> "Any teacher affected by an involuntary transfer shall be notified as promptly as possible and shall be afforded an opportunity to have a conference with an appropriate administrator. Upon request, he shall be permitted to resign without penalty within thirty (30) days, or sooner, provided a replacement is available. Any teacher transferred involuntarily shall have automatic right to make timely application for any subsequent vacancy. Administration shall provide said teacher's conference, upon request, to discuss the application prior to permanently filling the position."

The affidavit of Debbie Shelor, president of the Association, stated

she was familiar with the terms of the collective-bargaining agreement and "the intent of article II(L) was to give a teacher the opportunity to discuss an involuntary transfer with the appropriate administrator," but that "an appeal process to the school board was not contemplated."

■ This case turns upon the operation of sections 3 and 4 of the Act, which concern the rights of employees and employers, respectively. Section 3(b) grants to duly selected employee representatives, such as the Association, the right to collectively bargain as the employees' representative in a unit "on wages, hours, *terms and conditions of employment*." (Emphasis added.) 115 ILCS 5/3(b) (West 1994). Section 4 of the Act states:

> "Employers shall not be required to bargain over matters of inherent managerial policy, which shall include such areas of discretion or policy as the functions of the employer, standards of services, its overall budget, the organizational structure and selection of new employees and direction of employees." 115 ILCS 5/4 (West 1994).

However, employers are also required by section 4 of the Act, as to the impact of policy matters upon which they are required, to bargain collectively pursuant to section 3(b) of the Act. 115 ILCS 5/4 (West 1994).

■ The Association, the District, the ALJ, and the IELRB are in agreement that the question of the reassignment of teachers concerns "conditions of employment," as described in section 3(b) of the Act, and also matters of inherent managerial policy, such as the direction of employees, as set forth in section 4 of the Act. The opinion in the seminal case of *Central City Education Ass'n v. Illinois Educational Labor Relations Board*, 149 Ill. 2d 496, 523, 599 N.E.2d 892, 905 (1992), explained that in such circumstances a balance must be struck between "the benefits that bargaining will have on the decisionmaking process" and "the burdens that bargaining imposes on the employer's authority."

In recommending a decision favorable to the District, the ALJ concluded that the question of reassignments concerned the evaluation of teachers, "a sensitive subject" that would be made much more difficult by bargaining over it. *Sherrard Community Unit School District 200*, 13 Pub. Employee Rep. (Ill.) par. 1003, at IX—9, No. 96—CA—0004—S (Illinois Educational Labor Relations Board, Administrative Law Judge's Recommended Decision and Order, October 28, 1996). Therefore, the ALJ concluded that the question of Schneck's transfer was not a subject of mandatory bargaining. The ALJ noted that article II(L) of the collective-bargaining agreement

indicated that some bargaining had taken place concerning the involuntary transfer of teachers but deemed this provision dealt with the impact of an assignment change for a teacher and not with the question of whether the assignment should be made.

In rejecting the recommendation of the ALJ and finding the District guilty of an unfair labor practice, the IELRB opinion and order made clear it was not deciding whether a determination to reassign teachers is necessarily a matter upon which collective bargaining is required. However, the IELRB determined that in applying the *Central City* test to the facts of this case, collective bargaining was required because the fact that bargaining took place and easily resulted in a change in plans—granting relief to an employee (Schneck)—proved that here bargaining did not impose an undue burden on the District's authority.

■ We agree that bargaining took place even though Schneck did not speak at length to the Board. She requested relief and obtained it. Had she come before the Board with a representative of the Association, the proceedings would have been somewhat more complex because the representative of the Association likely would have been required to also look out for the interests of the teacher who was required to take the assignment to which Schneck objected. However, when a decision as to whether an issue is one that requires collective bargaining and the balancing test of *Central City* is reached, the determination of that sensitive question is a "fact-specific" one upon which great deference is given to the IELRB. *Central City,* 149 Ill. 2d at 523, 599 N.E.2d at 905.

The IELRB decision here was not entirely satisfactory to either the Association or the District. The Association maintains the decision was too narrow and the IELRB should have set down a rule that questions concerning the reassignment of teachers are always a subject of mandatory bargaining. As we give deference to the IELRB's decision that under the circumstances here the District committed an unfair labor practice by bargaining with Schneck without participation by the Association, we also give deference to the IELRB determination to make a narrow decision. A holding that not every action of a school district in making reassignments of teachers requires collective bargaining makes good sense, and the situation here has several unique aspects.

In *Central City,* 149 Ill. 2d at 509-11, 599 N.E.2d at 898-99, the Supreme Court of Illinois cited, with apparent approval, the opinion of this court in *Decatur Board of Education, District No. 61 v. Illinois Educational Labor Relations Board,* 180 Ill. App. 3d 770, 774, 536 N.E.2d 743, 745 (1989), wherein this court stated that Pennsylvania

legislation was used as a guideline in establishing the Act. Here, the District cites *Forest Area School District*, 19 Pub. Employee Rep. (Pa.) par. 19116, No. PERA—C—87—593—W (Pennsylvania Labor Relations Board, April 12, 1988), where the Pennsylvania Labor Relations Board (PLRB) upheld its secretary's decision to dismiss the association's charges of unfair labor practices. The association charged that the school district committed an unfair labor practice by transferring an employee from a position within the bargaining unit represented by the association to one outside that particular unit. No other facts were alleged. In ruling to dismiss the charge, the PLRB stated:

> "To the extent that it may be Complainant's allegation that the transfer of an employe[e] from a bargaining unit to a position outside of the bargaining unit absent other motives which may indicate a specific unlawful motive, is itself unlawful or an unfair practice, the Board specifically rejects any such notion. The employer may lawfully transfer employe[e]s within its managerial discretion so long as its motives are not unlawful as expressly recognized in [s]ection 702 of [the Pennsylvania Public Employee Relations Act (PERA)]." *Forest*, 19 Pub. Employee Rep. (Pa.) par. 19116, at 285.

The District, in its reply brief, cited two additional cases where the PLRB held that an employer had the right to determine issues of transferring employees without bargaining with the association representative. In *Baldwin-Whitehall School District*, 7 Pub. Employee Rep. (Pa.) 221, No. PERA—C—7706—W (Pennsylvania Labor Relations Board, June 10, 1976), an employee (teacher's aide) was voluntarily transferred to a secretarial position without prior school board approval. Subsequently, the school board denied approval and the employee was transferred back to her former position. The association filed unfair labor practice charges alleging the school district violated the Pennsylvania PERA for failing to meet and bargain with it prior to transferring the employee back to her former position. Apparently, there was no history of the school district discussing its hiring and transferring decisions with the association.

There, the PLRB concluded that the school district's failure to bargain with the association did not violate the act, stating:

> "From a review of the record, it would appear that such action did not constitute a failure on the part of the [district] to bargain collectively in good faith. In the absence of unusual circumstances, which do not appear in this case, the [district] has the right, without violating the Act, to refrain from hiring or transferring personnel as a regular exercise of their rights as employers unless in doing so they are motivated by anti-union animus against an

employe[e] or are attempting to discourage union membership by their actions. Here the [district] proceeded as it always has in the past under previous contracts and no objection has been lodged previously." *Baldwin-Whitehall*, 7 Pub. Employee Rep. (Pa.) at 222.

Similarly, in *East Allegheny School District*, 13 Pub. Employee Rep. (Pa.) par. 13060, No. PERA—C—81—128—W (Pennsylvania Labor Relations Board, Hearing Examiner's Decision, February 12, 1982), the hearing examiner considered whether the school district had to bargain over procedures used in filling department head positions. The PLRB looked to New Jersey educational labor board cases and approved the New Jersey precedent that held employers had to bargain over procedures used to fill positions but not over the substantive decision of who should be hired. Accordingly, the PLRB held that the school district was required to bargain over the procedures to be used to fill vacancies in department head positions.

Here, in agreeing to article II(L) of the collective-bargaining agreement, the Association and the District created a method by which a teacher might proceed when "affected by an involuntary transfer." This was not followed when Schneck was erroneously advised to take the matter up directly with the District's governing Board rather than with the administration.

The Association seeks to draw an analogy between this case and *Board of Education of Sesser-Valier Community Unit School District No. 196 v. Illinois Educational Labor Relations Board*, 250 Ill. App. 3d 878, 620 N.E.2d 418 (1993). There, despite the existence of a collective-bargaining agreement, the school district dealt directly with three teachers and a volunteer sponsor of a program in regard to their retirement benefits, health insurance, or compensation. This court upheld an IELRB decision finding the school district's conduct constituted an unfair labor practice. This court stated:

"We conclude that the District here did more than merely listen to the individual employees; it also acted on their requests to affect the terms and conditions of their employment—without notice to and bargaining with the Association—to the economic advantage of the individual employees. The IELRB's analysis of the employer's argument on this point makes clear that the violation lies in *bypassing the exclusive representative* in dealing directly with individual employees on such matters. (8 Pub. Employee Rep. (Ill.) par. 1023, at IX—93 through IX—95.) This bypassing necessarily undermines the Association's status as the exclusive bargaining representative of employees in the bargaining unit when individual employees can, by going directly to the superintendent with a proposal, secure for themselves benefits the Association did not

procure for them. The power to deal with individual members of the Association would give the employer the power to effectively undermine the Association, contrary to the intent of the Act." (Emphasis in original.) *Sesser-Valier*, 250 Ill. App. 3d at 884, 620 N.E.2d at 421-22.

This case is different from *Sesser-Valier* because there no balancing test was involved. The subject matter involved was only the amount of remuneration to be paid to the employees. It is precedent for a rule that the fact that the employee receives the relief requested does not legitimatize the agreement for compensation that was reached without the presence or participation of the employee's bargaining representative. The decision also emphasizes the intent of the Act to prohibit negotiations between employers and employees, which undermine the position of the duly selected bargaining agent.

The District points out that Schneck was sent to the District's Board under a belief that the procedure was authorized by section 10—16 of the School Code. However, section 17 of the Act states that "[i]n case of any conflict between the provisions of this Act and any other law, executive order or administrative regulation, the provisions of this Act shall prevail and control." 115 ILCS 5/17 (West 1994). Section 17 sets forth as the only exception to the Act's supremacy certain civil service rights not pertinent here. Thus, if the issue here was a matter requiring bargaining, after applying the balancing test of *Central City*, section 10—16 of the School Code would not change that status.

The District points out that, under the instant ruling of the IELRB, a school district might not know whether it was required to bargain collectively upon an issue until after the bargaining was over. That is the biggest weakness of the IELRB decision and our affirmance. On the other hand, the decision protects the District from always having to bargain collectively on the question of reassignment of teachers. The confusion exists only when the issue is such that the balancing test under *Central City* is applicable. Here, the District could have avoided the problem by sending Schneck to the District's administrators, as contemplated by the collective-bargaining agreement, rather than to the Board.

Implicit in the decision of the IELRB here is a concern that the procedure adopted by the District had too great a tendency to undermine the Association, as did the procedure in *Sesser-Valier*. This problem could have been avoided if the District had required Schneck to be accompanied by a representative of the Association before her case could be presented to the Board. This would have constituted collective bargaining. Perhaps one lesson that is learned

from this case is in close cases involving the balancing test of *Central City*, an educational employer that opts to bargain individually with an employee does so at its peril because the result of the bargaining, as here, is likely to show that bargaining was not unduly burdensome to the educational employer, thus requiring the bargaining to be done with the duly established representative of the employees.

We recognize the decision here is not a perfect answer to the conflicting interests, but we believe the IELRB has struck a reasonable balance that educational employers and employees can live with. The sanctions imposed were not severe and we are confident the dispute can be settled through bargaining that includes the Association. Accordingly, we affirm the decision of the IELRB.

Affirmed.

STEIGMANN and McCULLOUGH, JJ., concur.