BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS, Petitioner, v. ILLINOIS EDUCATIONAL LABOR RELATIONS BOARD *et al.*, Respondents.

Fourth District   No. 4—92—0077

Opinion filed April 29, 1993.

R. Theodore Clark, Jr. (argued), and Anthony B. Byergo, both of Seyfarth, Shaw, Fairweather & Geraldson, of Chicago, for petitioner.

Roland W. Burris, Attorney General, of Springfield (Rosalyn B. Kaplan, Solicitor General, and Jennifer A. Keller, Assistant Attorney General (argued), of Chicago, of counsel), for respondent Illinois Educational Labor Relations Board.

Stanley Eisenstein (argued), of Katz, Friedman, Schur & Eagle, of Chicago, for other respondent.

Kelly R. Welsh, Corporation Counsel, of Chicago (Lawrence Rosenthal, Benna Ruth Solomon, and Joan Flynn, Assistant Corporation Counsel, of counsel), for *amicus curiae* City of Chicago.

Melissa J. Auerbach, of Cornfield & Feldman, of Chicago, for *amici curiae* Illinois Federation of Teachers and AFSCME.

Gregory J. Malovance and Lois H. Johnson, both of Winston & Strawn, of Chicago, and Mitch Roth and Sandra J. Holman, both of Illinois Education Association-NEA, of Springfield, for *amicus curiae* Illinois Education Association-NEA.

JUSTICE COOK delivered the opinion of the court:

Petitioner Board of Trustees of the University of Illinois (University) seeks direct administrative review of the opinion and order of the Illinois Educational Labor Relations Board (Board) finding it committed an unfair labor practice in violation of section 14(a)(5) and, derivatively, section 14(a)(1) of the Illinois Educational Labor Relations Act (Act) (Ill. Rev. Stat. 1991, ch. 48, pars. 1714(a)(5), (a)(1)). (*University of Illinois (Chicago)*, 8 Pub. Employee Rep. (Ill.) par. 1014, No. 91—CA—0008—C (Illinois Educational Labor Relations Board Dec.

26, 1991) (hereinafter 8 Pub. Employee Rep. (Ill.) par. 1014).) We affirm.

The facts are not in dispute. On August 20, 1990, respondent General Service Employees Union, Local 73, SEIU, AFL-CIO (Union), filed an unfair labor practice charge with the agency (IELRB), alleging that since January 21, 1990, the University had bargained in bad faith by bargaining to an impasse on a nonmandatory subject of bargaining: the University's insistence that a provision for binding arbitration of grievances be excluded from the collective-bargaining agreement. (It could be said that the Union also refused to bargain, as both sides refused to give in. The Union, however, asserted that it had a right to refuse to bargain on this issue while the University did not.) The Union alleged binding arbitration of grievances is required by section 10(c) of the Act (Ill. Rev. Stat. 1991, ch. 48, par. 1710(c)). The Executive Director of the IELRB subsequently issued a complaint which alleged that since June 21, 1990, and continuing to date, the University had insisted to impasse to exclude certain subjects of collective bargaining from the grievance and arbitration procedure, *i.e.*, discharge, demotion, position classification and discrimination, in violation of section 10(c) of the Act. The complaint alleged the University, due to this conduct, refused to bargain collectively in good faith in violation of section 14(a)(5) and, derivatively, section 14(a)(1) of the Act.

The charges stem from the University's conduct during negotiations between the parties for a successor contract to their 1987-90 collective-bargaining agreement. Article VII, section 1, of that agreement, entitled "Reprimand, Suspension, Demotion and Discharge," provided:

> "Whenever an employee covered by this Agreement is given a written warning or reprimand, or is suspended, demoted, or discharged, a copy of the notice of such action, unless otherwise requested not to do so by the employee, will be given to the Union. Appeals from reprimand or suspension actions shall be in accordance with the Grievance Procedures outlined herein. Appeals from *demotion* or *discharge* actions shall be in accordance with the rules and procedures established by the State Universities Civil Service System." (Emphasis added.)

Article VIII, section 2, outlined the grievance procedure. Under the procedure, the employee was first to discuss the complaint with his/her supervisor. If the complaint was not satisfactorily resolved, the employee could then file a formal written grievance. The written grievance procedure provided a three-step review. After the third

step, the grievance could be removed to arbitration. Section 4(f), however, stated: "Grievances relative to *Discharge, Demotion, Position Classification and Discrimination are not* subject to arbitration." (Emphasis added.)

The parties first met to bargain a successor contract on June 21, 1990. At that session, the Union proposed a revision to the grievance procedure, suggesting that section 4(f) be deleted. The University's counterproposal contained an election of remedies proposal: an employee could challenge demotion or discharge by electing to follow the procedures under the State University Civil Service System or by arbitrating the matter, but not both. If the employee chose to appeal the matter through the civil service system, the employee waived any rights he or the Union had to use the grievance procedure set forth in the collective-bargaining agreement. With respect to grievances over position classification and discrimination, the University's position was, as in the previous contract, that such grievances would not be subject to arbitration. The University noted that position classification claims could be appealed to the Civil Service System Merit Board, and discrimination claims could be appealed to various State or Federal forums.

The Union took a firm position prior to reaching impasse that the University's proposals were permissive subjects of bargaining. The Union rejected the University's counterproposal, but the position of the University did not change. The Union then filed its unfair labor practice charge. The Board held a hearing on January 10, 1991. At the hearing, the parties stipulated they had reached impasse in collective-bargaining negotiations regarding the applicability of arbitration to discharge, demotion, position classification and discrimination disputes. At the conclusion of the hearing, the University moved pursuant to section 1120.40(f) of the Board's rules and regulations that the case be removed directly to the Board for a decision. (80 Ill. Adm. Code §1120.40(f) (1991).) The Union agreed and the matter was removed to the Board.

The Board was notified via letter from the University on April 10, 1991, that the parties had returned to the bargaining table and had reached an agreement on the terms of a new contract. The new collective-bargaining agreement contained the exact provisions proposed by the University and objected to by the Union. The Union, however, made it clear it was unwilling to waive its statutory right to arbitration and intended to pursue the matter before the Board. The Board later rejected the University's argument that the new agreement waived the issues raised on this appeal.

After hearing oral arguments, the Board issued its opinion and order. It concluded that the proposal to exclude discrimination and position classification issues from arbitration, and the election of remedies proposal, were *permissive* subjects of bargaining, and the University violated sections 14(a)(5) and (a)(1) of the Act by bargaining to impasse on them.

Parties must negotiate in good faith over *mandatory* subjects of bargaining but are not required to agree or make a concession on those subjects. An employer may bargain to impasse over a mandatory subject of bargaining, then unilaterally implement a change consistent with its pre-impasse proposal. In contrast, an employer may not bargain to impasse over a *permissive* subject of bargaining, a subject which the Union may absolutely insist upon. The Union may choose to give up its right, and the parties may negotiate for that concession, but if the Union refuses to give in the employer may not make the concession a condition of any agreement.

The Board found that any topic included in a collective-bargaining agreement was subject to the statutorily required arbitration clause unless the parties clearly and voluntarily excluded the topic from arbitration. (See *Chicago Board of Education*, 6 Pub. Employee Rep. (Ill.) par. 1048, No. 88—CA—0056—C (Illinois Educational Labor Relations Board Mar. 12, 1990).) The Board found it well settled that a proposal requiring the diminution of a statutory right was only a permissive subject of bargaining. Both the University's proposals, to require an election of remedies on demotion or discharge issues and to exclude position classification and discrimination issues from arbitration entirely, were permissive subjects of bargaining; they did not come within the definition of a mandatory subject of bargaining and would potentially undermine the Union's role in the collective-bargaining process. (8 Pub. Employee Rep. (Ill.) par. 1014, at IX-59 through IX-60.) The Board saw arbitration as a matter of importance not just to the individual with a grievance, but to the Union itself, as arbitration (including cases brought by the Union over the objection of the affected individual) was the method by which the contract was enforced. The Union could not be required to waive its right to arbitrate. Nor was it sufficient, for demotion or discharge actions, to give the individual member an election between arbitration and Merit Board review: "the Union's exercise of its statutory rights as the exclusive representative to enforce the contract by collective action [could not be conditioned] on the approval of the individual employee affected by the discipline." 8 Pub. Employee Rep. (Ill.) par. 1014, at IX-57.

The Board saw arbitration as a different, more advantageous remedy, for both unions and their members than the other remedies which were available. Despite this court's previously expressed concern that dual dispute resolution procedures be avoided in the interests of judicial economy and to avoid problems of *res judicata* (*Board of Governors of State Colleges & Universities v. Illinois Educational Labor Relations Board* (1988), 170 Ill. App. 3d 463, 524 N.E.2d 758; *cf. Ryherd v. General Cable Co.* (1988), 124 Ill. 2d 418, 432, 530 N.E.2d 431, 438 (grievance and discharge claim not two bites at *same* apple)), the Board felt that an employee could not be precluded from pursuing a claim the right to which was provided by statute. (Ill. Rev. Stat. 1991, ch. 48, par. 1710(b).) Although the individual had a statutory right to Merit Board review which the Union and the University could not agree to waive, the Board found a proposal giving the individual the right to choose between arbitration and Merit Board review was a permissive subject of bargaining, not a prohibited one.

Bargaining to impasse over a permissive issue was " 'in substance, a refusal to bargain about the subjects that are within the scope of mandatory bargaining.' " (8 Pub. Employee Rep. (Ill.) par. 1014, at IX-58, quoting *NLRB v. Woosler Division of Borg-Warner Corp.* (1958), 356 U.S. 342, 349, 2 L. Ed. 2d 823, 829, 78 S. Ct. 718, 723.) Such conduct "essentially holds a mandatory subject hostage." (8 Pub. Employee Rep. (Ill.) par. 1014, at IX-62.) The Board found the University violated sections 14(a)(5) and (a)(1) of the Act by bargaining to impasse and ordered it to cease from enforcing or giving effect to the provisions at issue. This appeal followed.

The supreme court in *Central City Education Association v. Illinois Educational Labor Relations Board* (1992), 149 Ill. 2d 496, 599 N.E.2d 892, recently considered whether (1) a school district's decision to reduce in force, or (2) the implementation and impact of a teachers' evaluation program was a mandatory subject of bargaining. The school districts argued they were not, that section 4 of the Act provided that employers were not required to bargain over matters of "inherent managerial policy." (Ill. Rev. Stat. 1991, ch. 48, par. 1704.) Section 4 goes on to require collective bargaining, even as to matters of inherent managerial policy, "with regard to policy matters directly affecting wages, hours and terms and conditions of employment as well as the impact thereon." (Ill. Rev. Stat. 1991, ch. 48, par. 1704.) Section 10(a) of the Act more generally imposes a duty upon educational employers to bargain "with respect to wages, hours and other terms and conditions of employment." (Ill. Rev. Stat. 1991, ch. 48, par. 1710(a).) The supreme court observed that virtually every deci-

sion in collective bargaining could be characterized as either inherently managerial or as concerning wages, hours and terms and conditions of employment. *Central City*, 149 Ill. 2d at 522, 599 N.E.2d at 904.

■ In *Central City*, the supreme court set forth a three-part test to determine whether an issue is a mandatory subject of bargaining:

"After a thorough review of the legislative history, case law, and the experiences in our sister States and in the private sector, this court finds that the manifest intent of sections 4 and 10 can best be met by utilizing a three-part balancing test as a method for analyzing whether or not a given issue is a mandatory subject of bargaining.

The first part of the test requires a determination of whether the matter is one of wages, hours and terms and conditions of employment. This is a question that the IELRB is uniquely qualified to answer, given its experience and understanding of bargaining in education labor relations. If the answer to this question is no, the inquiry ends and the employer is under no duty to bargain.

If the answer to the first question is yes, then the second question is asked: Is the matter also one of inherent managerial authority? If the answer to the second question is no, then the analysis stops and the matter is a mandatory subject of bargaining. If the answer is yes, then the hybrid situation discussed in section 4 exists: the matter is within the inherent managerial authority of the employer and it also affects wages, hours and terms and conditions of employment.

At this point in the analysis, the IELRB should balance the benefits that bargaining will have on the decisionmaking process with the burdens that bargaining imposes on the employer's authority. Which issues are mandatory, and which are not, will be very fact-specific questions, which the IELRB is eminently qualified to resolve." *Central City*, 149 Ill. 2d at 523, 599 N.E.2d at 904-05.

■ *Central City* was decided after the Board rendered its decision in the present case. The University and *amici*, however, contend the *Central City* analysis applies literally here. Under that argument, using the language of *Central City*: (1) the matter of demotions, discharges, position classifications and discrimination "is one of wages, hours and terms and conditions of employment" (see *Central City*, 149 Ill. 2d at 523, 599 N.E.2d at 905); (2) the matter is not "one of inherent managerial authority" (see *Central City*, 149 Ill.

2d at 523, 599 N.E.2d at 905), and as "the answer to the second question is no, then the analysis stops and the matter is a mandatory subject of bargaining" (see *Central City*, 149 Ill. 2d at 523, 599 N.E.2d at 905). Accordingly there is no call for the Board to proceed to the third stage and balance benefits and burdens to the parties. The University's argument is frivolous and fails to acknowledge a fundamental difference between *Central City* and this case. It was the school district which asserted a right not to bargain in *Central City*; it is the Union which asserts a right not to bargain here. Literal application of the *Central City* test here would deny the Union any opportunity to assert its statutory right to insist on arbitration.

We agree with respondents and their *amici* that *Central City* does not apply. The supreme court devised the three-part test to reconcile section 10(a) (Ill. Rev. Stat. 1991, ch. 48, par. 1710(a)), which sets out a duty of educational employers to bargain in good faith with respect to wages, hours and terms and conditions of employment, and section 4 (Ill. Rev. Stat. 1991, ch. 48, par. 1704), which states employers are not required to bargain over matters of inherent managerial policy. Recognizing the tension between these sections, the court created a balancing test to be applied where a matter concerns *both* wages, hours and terms and conditions of employment and a question of inherent managerial policy. In the present case, the proposals do not concern inherent managerial policy, no section 4 problem is presented, and therefore the *Central City* test does not apply.

Looking more broadly at *Central City*, it could be argued that statutory rights should seldom be viewed as absolute, that in every case the benefits and burdens of bargaining, and of allowing parties to bargain to impasse, should be balanced by the Board. It would be possible to devise a test, modeled after *Central City*, to deal with a situation where the Union (not the employer) asserts a right to refuse to bargain. The Board in fact followed a *Central City* analysis and balanced burdens and benefits in the present case, concluding that the strong policy favoring arbitration outweighed any interest of the employer. The Board rejected the argument that its decision would be harmful to the bargaining process by encouraging employers to refuse to include in the collective-bargaining agreement matters that are now included, rather than risk those matters be covered by an arbitration clause.

The University argues that it is clear that grievance and arbitration procedures and rights are within the scope of "other terms and conditions of employment," and generally are mandatory subjects of bargaining. (Ill. Rev. Stat. 1991, ch. 48, par. 1710(a).) The University

cites Federal cases allowing an employer to bargain to impasse over a proposal to exclude items from arbitration. Unlike the Illinois Act, however, the Labor Management Relations Act, 1947 (29 U.S.C. §151 et seq. (1988)), does not mandate binding arbitration. Management typically views the grant to an arbitrator of final authority to rule on grievances as a significant concession. (*Maine Township High School District No. 207*, 2 Pub. Employee Rep. (Ill.) par. 1068, No. 85—CA—0047—C (Illinois Educational Labor Relations Board May 30, 1986).) Nevertheless, the legislature has determined that concession shall be made, that collective-bargaining agreements "shall provide for binding arbitration of disputes." (Ill. Rev. Stat. 1991, ch. 48, par. 1710(c).) Unions likewise view giving up their right to strike as a significant concession, but the same statute requires the collective-bargaining agreement to contain language "prohibiting strikes for the duration of the agreement." Ill. Rev. Stat. 1991, ch. 48, par. 1710(c).

"Determination of whether specific issues are mandatorily bargainable or not is best left to the [IELRB], which has the knowledge and experience to balance the equities in a given case." (*Central City*, 149 Ill. 2d at 522, 599 N.E.2d at 904.) Considerable deference must be given to the IELRB because of its expertise in educational labor matters. (*Decatur Federation of Teachers v. Illinois Educational Labor Relations Board* (1990), 199 Ill. App. 3d 190, 197, 556 N.E.2d 780, 784; *Decatur Board of Education, District No. 61 v. Illinois Educational Labor Relations Board* (1989), 180 Ill. App. 3d 770, 775, 536 N.E.2d 743, 746.) To do otherwise would transform appellate review into trial *de novo*. Such a result would substitute the court's general knowledge for the expertise required of Board members by section 5 of the Act (Ill. Rev. Stat. 1991, ch. 48, par. 1705). (*Decatur Board of Education*, 180 Ill. App. 3d at 775, 536 N.E.2d at 746.) We affirm the Board's decision that the proposals to exclude matters from arbitration were only permissive subjects of bargaining in this case.

The University also argues that, whether or not its proposals are considered permissive subjects of bargaining, section 4 of the Act should be construed to "grandfather" the proposals into mandatory subjects of bargaining. Section 4 of the Act provides:

"To preserve the rights of employers and exclusive representatives which have established collective[-]bargaining relationships or negotiated collective[-]bargaining agreements prior to the effective date of this Act, *employers shall be required* to bargain collectively with regard to any matter concerning wages, hours or conditions of employment about which they have bargained for and agreed to in a collective[-]bargaining agreement prior

to the effective date of this Act." (Emphasis added.) (Ill. Rev. Stat. 1991, ch. 48, par. 1704.)

The University maintains that prior to the effective date of the Act the parties had bargained and agreed to exclude certain terms of the collective-bargaining agreement from arbitration. Therefore, under section 4 such exclusions are "grandfathered in" as mandatory subjects of bargaining which may be bargained to impasse.

The Board found the University's position contrary to the plain language of the statute, because section 4 does not establish a mutual duty to bargain as to both employers and exclusive representatives. Only employers are required to bargain about matters included in pre-Act agreements. The legislative history demonstrated the legislature intended to focus on the employer's duty to bargain. (8 Pub. Employee Rep. (Ill.) par. 1014, at IX-63 through IX-64.) The Board also noted the University's position sought to "neutralize the implications of the Act" and would allow "contracts which excluded certain subjects from arbitration before the Act [to] carry such exclusions indefinitely, forever avoiding the statutory mandate. Such a rationale [would subvert] the purpose of Section 4, since the Legislature did not intend to decrease the scope of bargaining by enacting the [Act]." 8 Pub. Employee Rep. (Ill.) par. 1014, at IX-64.

The role of a court in interpreting a statute is to ascertain the intent of the legislature and to give effect to that intent. In determining legislative intent, the court should first consider the statutory language; where the language is clear and unambiguous, the courts must enforce the law as enacted without resort to other aids of statutory construction. (*Kraft, Inc. v. Edgar* (1990), 138 Ill. 2d 178, 189, 561 N.E.2d 656, 661.) As a general rule, the interpretation placed on a statute by the agency charged with its administration and enforcement is accorded deference by the courts. (*City of Burbank v. Illinois State Labor Relations Board* (1989), 128 Ill. 2d 335, 345, 538 N.E.2d 1146, 1149.) The agency's interpretation is not, however, binding and will be rejected when it is erroneous. *Hardin County Education Association v. Illinois Educational Labor Relations Board* (1988), 174 Ill. App. 3d 168, 174, 528 N.E.2d 737, 740.

Based upon the language of the statute, and the Board's construction of the statute, its determination that the prior exclusions from arbitration were not "grandfathered in" are supported by the Act. The clear language of section 4 imposes a duty only upon the employer to bargain collectively with regard to matters included in a collective-bargaining agreement agreed to prior to the effective date of the Act. The exclusive representative of the bargaining unit does not

have a corresponding duty to bargain. An "employer" is defined by the Act and does not include the exclusive representative of the bargaining unit. (See Ill. Rev. Stat. 1991, ch. 48, par. 1702(a).) Had the legislature intended both parties to have a mutual duty to bargain, it could have included exclusive representatives in this section.

For the foregoing reasons, the decision of the Board is affirmed.

Affirmed.

McCULLOUGH and KNECHT, JJ., concur.