# Illinois Official Reports

## Appellate Court

---

**Wheaton Firefighters Union, Local 3706 v. Illinois Labor Relations Board, State Panel**
**2016 IL App (2d) 160105**

---

| | |
|---|---|
| Appellate Court Caption | THE WHEATON FIREFIGHTERS UNION, LOCAL 3706, Petitioner, v. THE ILLINOIS LABOR RELATIONS BOARD, STATE PANEL; JOHN HARTNETT, PAUL BESSON, JAMES BRENNWALD, MICHAEL COLI, and ALBERT WASHINGTON, in their Official Capacities as Members of the Board and Panel; and THE CITY OF WHEATON, Respondents. |
| District & No. | Second District<br>Docket No. 2-16-0105 |
| Filed | June 22, 2016 |
| Decision Under Review | Petition for review of order of Illinois Labor Relations Board, State Panel, No. S-CA-14-067. |
| Judgment | Affirmed. |
| Counsel on Appeal | Susan M. Matta, of Carmell Charone Widmer Moss & Barr, of Chicago, for petitioner.<br><br>Benjamin E. Gehrt and Roxana M. Crasovan, both of Clark Baird Smith LLP, of Rosemont, for respondent City of Wheaton.<br><br>Lisa Madigan, Attorney General, of Chicago (Carolyn E. Shapiro, Solicitor General, and Valerie J. Quinn, Assistant Attorney General, of counsel), for other respondents. |

PRESIDING JUSTICE SCHOSTOK delivered the judgment of the court, with opinion.
Justices McLaren and Spence concurred in the judgment and opinion.

# OPINION

¶ 1    The Wheaton Firefighters Union, Local 3706 (the Union), and the City of Wheaton (the City) are parties to a collective bargaining agreement. In 2012, after failed negotiations, the Union invoked interest arbitration pursuant to section 14 of the Illinois Public Labor Relations Act (Act) (5 ILCS 315/14 (West 2012)). During the interest arbitration proceedings, the City sought to add a provision to the parties' agreement that would allow it to unilaterally change the health insurance benefits that it was providing to the Union's members during the period of the agreement. The Union responded by filing an unfair-labor charge against the City, arguing that the City was acting in bad faith by submitting an inappropriate matter to interest arbitration. The Illinois Labor Relations Board (the Board) found that the City had not acted in bad faith, because the City's mere submission of its health insurance proposal to interest arbitration did not demonstrate that the City violated the Act. The Union appeals from that order. For the reasons that follow, we affirm.

¶ 2                             BACKGROUND

¶ 3    The Union represents a bargaining unit that consists of full-time firefighters, lieutenants, and captains/shift commanders. The Union and the City entered into a collective bargaining agreement that was effective from 2007 to April 30, 2012. In February 2012, the Union and the City began negotiations for a successor contract.

¶ 4    After failed negotiations and mediation, the Union invoked interest arbitration pursuant to section 14 of the Act (*id.*). During interest arbitration, the City proposed modifications to that part of the agreement pertaining to health insurance. Those proposed modifications were as follows:

"A. The City will provide medical insurance benefits to Employees and their eligible dependents on the same basis provided to non-bargaining unit City employees except that effective July 1, 2012, the employee contribution amount will be adjusted in accordance with the schedule listed below:

[schedule omitted]

B. For each employee contribution change during the life of this Agreement, the annual employee contribution shall not increase by more than 15% in any one year. The City's cost shall be based on the monthly amount charged to the City \*\*\* by the City's provider. If actual Cost turns out to be different than the monthly charge, employees will not be required to make additional contributions and will not be entitled to any refunds. Employees have no right, title or interest in any reserves or assets of the health insurance plan. The amount will be paid through the pre-tax deduction available through the City Plan. *The City reserves the right to change: any and all terms of such benefits including, but not limited to: insurance carriers, self-insurance or risk pools, PPO networks, medical providers, covered benefits, maximum limits, deductible, and*

*co-payments, so long as such changes apply equally to non-bargaining unit employees of the City.*" (Emphasis added.)

The Union responded that the arbitrator did not have jurisdiction to resolve the issue pertaining to health insurance, because it was a permissive subject of bargaining.

¶ 5      The arbitrator issued an opinion and award resolving all disputed issues except the issue pertaining to health insurance and one other issue that is not part of this appeal. The arbitrator retained jurisdiction to resolve those issues upon the Board's resolution of the unfair-labor-practice complaint that subsequently was filed.

¶ 6      On October 28, 2013, the Union filed an unfair-labor-practice charge with the Board, alleging that the City had engaged in an unfair labor practice within the meaning of sections 10(a)(4) and (a)(1) of the Act by submitting its healthcare proposal, a permissive subject of bargaining, to the interest arbitrator. Section 10(a)(4) of the Act makes it an unfair labor practice for an employer "to refuse to bargain collectively in good faith" with a union. 5 ILCS 315/10(a)(4) (West 2012). Section 10(a)(1) prohibits an employer from interfering with or restraining public employees in the exercise of their rights guaranteed by the Act. 5 ILCS 315/10(a)(1) (West 2012). After investigation, the Board's executive director issued a complaint for hearing.

¶ 7      On August 15, 2014, an administrative law judge (ALJ) issued a recommended decision and order. The ALJ noted that the issue before her was whether the City violated sections 10(a)(4) and (a)(1) of the Act by submitting its final offer on healthcare to the interest arbitrator. The ALJ concluded that the healthcare proposal was a permissive subject of bargaining because it would give the City broad discretion to make midterm changes to Union members' healthcare benefits and would require the Union to waive its statutory right to midterm bargaining on those issues.

¶ 8      Relying on *Village of Bensenville*, 14 PERI ¶ 2042 (ISLRB 1998), the ALJ determined that the City had not violated the Act, because a respondent does not refuse to bargain in good faith merely by submitting a proposal that is a permissive subject of bargaining to an interest arbitrator. Accordingly, the ALJ recommended dismissal of the complaint. The Union filed exceptions to that recommendation, and the City filed cross-exceptions.

¶ 9      On January 26, 2015, the Board dismissed the Union's unfair-labor-practice complaint. After determining that the City's healthcare proposal was a permissive subject of bargaining, the Board found that, pursuant to *Bensenville*, the submission of this permissive proposal to interest arbitration did not violate the Act. The Board further found that its rules provide a mechanism for a party to prevent a proposal that is a permissive subject of bargaining from being considered by the interest arbitrator. Specifically, section 1230.90(k) of the Board's rules (80 Ill. Adm. Code 1230.90(k), amended at 27 Ill. Reg. 7456 (eff. May 1, 2003)) provides that a party may object to the submission of a permissive proposal, and once an objection has been raised, the Act and rules expressly state that the arbitrator shall not consider that issue.

¶ 10      Following the Board's ruling, the Union filed an appeal, seeking direct administrative review in this court.

¶ 11                                                    ANALYSIS

¶ 12      Prior to addressing the merits of the Union's appeal, we first consider whether the Union's appeal is moot. The City argues that there is no longer any controversy between the parties,

because the City and Union have mutually agreed to settle and execute the underlying collective bargaining agreement at issue during the interest arbitration. The City points out that the parties have also executed a successor collective bargaining agreement that will not expire until April 30, 2018. The City asserts that the resolution of both of these contracts completely resolves the Union's concerns that the City's health insurance proposal was a permissive subject of bargaining, because the parties have agreed not to include the alleged permissive language in either of the successor agreements. The City contends that, because none of the exceptions to the mootness doctrine apply, this court should dismiss the Union's appeal.

¶ 13    The City's argument has been consistently rejected by the United States Supreme Court as well as by labor boards. See *National Labor Relations Board v. American National Insurance Co.*, 343 U.S. 395, 412 n.4 (1952) (determining that negotiation of labor contract had not rendered case moot); *J.I. Case Co. v. National Labor Relations Board*, 321 U.S. 332, 334 (1944) (where employer refused to bargain with employees' bargaining representative on ground that existing contracts with individual employees barred it from doing so, fact that individual contracts had expired and that collective contract had since been negotiated did not make case "moot" so as to preclude *certiorari* review by Supreme Court); *Tri-State Fire Protection District*, 31 PERI ¶ 78 (ILRB State Panel 2014) (finding that bargaining collectively in good faith at a later point in time does not necessarily obviate, or render moot, bargaining in bad faith at an earlier point in time); *DeKalb Classroom Teachers Ass'n*, 5 PERI ¶ 1144 (IELRB 1989) (finding that although employer corrected wrongdoing as issue was ultimately settled, an unfair labor practice nonetheless occurred when employer had refused to bargain in good faith). Accordingly, we decline to dismiss the Union's appeal as moot.

¶ 14    Turning to the merits of the Union's appeal, we first consider our standard of review and the relevant principles under the Act. The Board's resolution of the issue before it—whether the City's submission of its healthcare proposal to the interest arbitrator violated sections 10(a)(4) and (a)(1) of the Act—required the application of the legal standards to those established facts, and its decision is therefore on a mixed question of law and fact and subject to the "clearly erroneous" standard of review. *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 391 (2001). A decision is clearly erroneous only if the reviewing court has a definite and firm conviction that a mistake has been committed. *American Federation of State, County & Municipal Employees, Council 31 v. Illinois Education Labor Relations Board, State Panel*, 216 Ill. 2d 569, 577-78 (2005). To the extent that the Board resolves a pure question of law, the standard of review is *de novo*; however, reviewing courts will accord deference to the Board's reasonable construction of the statute that it is charged with enforcing. *City of Burbank v. Illinois State Labor Relations Board*, 128 Ill. 2d 335, 345 (1989).

¶ 15    Under section 10(a)(1) of the Act, it is an unfair labor practice for an employer to interfere with, restrain, or coerce public employees in the exercise of the rights guaranteed under the Act. 5 ILCS 315/10(a)(1) (West 2012). Section 10(a)(4) makes it an unfair labor practice for an employer to refuse to bargain collectively in good faith with a labor organization that is the exclusive representative of public employees in an appropriate unit. 5 ILCS 315/10(a)(4) (West 2012). When a public employer breaches its obligation to collectively bargain in good faith as required by section 7 of the Act, it violates section 10(a)(4) and, derivatively, section 10(a)(1) of the Act. *American Federation of State, County & Municipal Employees, Local 268*, 2 PERI ¶ 2008 (ISLRB 1986), *rev'd on other grounds sub nom. City of Decatur v. Illinois State*

*Labor Relations Board*, 149 Ill. App. 3d 319 (1986), *aff'd on other grounds*, 122 Ill. 2d 353 (1988). The duty to collectively bargain in good faith under the Act extends to issues that arise during the term of a collective bargaining agreement. *Mt. Vernon Education Ass'n v. Illinois Educational Labor Relations Board*, 278 Ill. App. 3d 814, 816 (1996).

¶ 16        Mandatory subjects of bargaining are matters over which parties are required to negotiate in good faith, but on which they are not required to reach agreement or make concessions. *Board of Trustees of the University of Illinois v. Illinois Educational Labor Relations Board*, 244 Ill. App. 3d 945, 949 (1993). Under section 7 of the Act, mandatory subjects of bargaining include matters "with respect to wages, hours, and other conditions of employment." 5 ILCS 315/7 (West 2012). The Board has also found that employees' health insurance benefits are mandatory bargaining subjects. See, *e.g.*, *International Union of Operating Engineers, Local 399*, 9 PERI ¶ 2034 (ISLRB 1993).

¶ 17        Matters that do not fall within the definition of mandatory subjects of bargaining are permissive subjects of bargaining. See *Board of Trustees*, 244 Ill. App. 3d at 949. Permissive subjects of bargaining include matters that the union has the right to insist on, such as the recognition of statutory rights. *Id.* at 949-50.

¶ 18        Here, the Union frames the issue on appeal as whether the Board erred when it found that the City had not violated section 10(a)(4) of the Act by failing to bargain in good faith with the Union when it insisted to impasse on a permissive subject of bargaining. The Union then argues that the Board's reliance on *Bensenville* in denying it relief was misplaced because that case is distinguishable and contrary to both Board precedent and Illinois case authority.

¶ 19        We do not believe that the Union's characterization of the issue before us is correct. Here, according to the stipulated record, the City did not raise its controversial healthcare proposal until the parties were already in front of the interest arbitrator. Thus, the question becomes whether a party's mere submission of a new proposal for the first time in front of an interest arbitrator can constitute an act of bargaining in bad faith.

¶ 20        As the Board and the City point out, the Board previously addressed a similar issue in *Bensenville*. In *Bensenville*, one party submitted a permissive proposal to the arbitrator, while the other party submitted a proposal that was in part mandatory and in part permissive. 14 PERI ¶ 2042 (ISLRB 1998). The Board in *Bensenville* stated that "nothing in the statutory language expressly indicate[s] or logically implie[s] that parties violate their duty to bargain in good faith simply by requesting that an interest arbitration panel consider a proposal which is subsequently determined to relate to matters which are permissive subjects of bargaining." *Id.* The *Bensenville* Board reasoned that section 14 of the Act does not, on its face, preclude the use of interest arbitration to resolve collective bargaining disputes over permissive subjects of bargaining.

¶ 21        The *Bensenville* Board noted that section 14 provides that, "[n]otwithstanding the provisions of this Section, the employer and exclusive representative may agree to submit unresolved disputes concerning wages, hours, terms and conditions of employment to an alternat[e] form of impasse resolution." 5 ILCS 315/14(p) (West 2012). The *Bensenville* Board determined that, by including this language, the General Assembly intended to allow the parties to "devise a flexible and cooperative approach to the resolution" of disputes, tailored to their particular needs and desires. *Bensenville*, 14 PERI ¶ 2042 (ISLRB 1998). The *Bensenville* Board concluded that the provisions of the Act as well as "basic principles of good faith collective bargaining favor such an approach." *Id.* In the instant case, the Board found that

*Bensenville* was controlling, as it was the "only Board decision in which this [issue] has been squarely presented." The Board reiterated the *Bensenville* Board's holding "that the mere submission to an interest arbitrator of a contract proposal pertaining to a permissive subject of bargaining does not violate the statutory duty to bargain in good faith." In so ruling, the Board rejected the Union's reliance on *Wheeling Firefighters Ass'n*, 17 PERI ¶ 2018 (ILRB State Panel 2001), and *Midlothian Professional Fire Fighters Ass'n, Local 3148*, 29 PERI ¶ 125 (ILRB State Panel 2013). The Board explained that those cases "concerned the nature of the particular bargaining proposal and not the precise topic of whether submission of a permissive subject of bargaining to interest arbitration constitutes an unfair labor practice."

¶ 22    We agree with the Board that its holding in *Bensenville* is dispositive of this appeal. *Bensenville* stands for the proposition that a party does not act in bad faith merely because it submits to an interest arbitrator a proposal pertaining to a permissive subject of bargaining. This is because, if the other party objects to the arbitrator's consideration of that issue, then the arbitrator "shall not consider that issue." 80 Ill. Adm. Code 1230.90(k), amended at 27 Ill. Reg. 7456 (eff. May 1, 2003). Thus, a party is not prejudiced by the submission of the issue, because its objection will preclude the arbitrator from considering it. As that is what happened in this case, the Board's reliance on *Bensenville* was not clearly erroneous. See *AFM Messenger Service*, 198 Ill. 2d at 391.

¶ 23    In so ruling, we find the Union's reliance on such cases as *Midlothian* and *Wheeling* to be misplaced because in those cases the parties had already been negotiating over the controversial issue when one of the parties submitted it to an interest arbitrator. As one party had already indicated to the other that it did not intend to relinquish its rights regarding a permissive subject of bargaining and have that issue submitted to an interest arbitrator, it was indeed bad faith for the other party to continue to press the issue and submit it to an interest arbitrator anyway. Here, by contrast, the City first submitted its controversial proposal when it was before the interest arbitrator. As the Union was able to remove the issue from consideration by merely objecting to it, the Union was not prejudiced. To the extent that *Midlothian* and *Wheeling* conflict with *Bensenville*, we agree with the Board that *Bensenville* is the appropriate precedent to carry out the liberal policy of having open channels to bargaining and resolutions of conflicts.

¶ 24    We also find without merit the Union's argument that this case will create an inconsistency between how grievances are treated under section 7 and section 8 of Act. We note that the Union's argument is based on the premise that it is improper to submit a new issue during interest arbitration proceedings. As we reject the Union's underlying premise, the Union's argument on this point necessarily fails.

¶ 25    We are also not persuaded by the Union's argument that the Board's remedy for the City's allegedly improper proposal is insufficient. The Board explained that, if the Union objected to an interest arbitrator considering an issue, the arbitrator would then not consider that issue. The Board found that that procedure sufficiently safeguarded the Union from having to arbitrate an issue. Relying on two cases currently before the Board, *Village of Skokie* and *Village of Barrington & Illinois FOP Labor Council*, the Union maintains that the Board's remedy is insufficient because an interest arbitrator might still improperly consider an issue even if a party objects to it. Specifically, the Union argues that in those cases:

> "the union took all necessary steps to benefit from the regulatory and statutory
> protections to no avail. The union objected to the permissive proposal at interest

arbitration and the arbitrator ruled on it anyway. *** The end result is that the employer was allowed to force the union to relinquish a statutory right, the parties have been required to engage in protracted litigation, and no relief is in sight."

In making this argument, the Union ignores the fact that the Board's remedy—a party's ability to prevent an arbitrator from considering an issue by objecting under section 1230.90(k) of the Board's rules—worked in this case. The fact that the Board's remedy might not have worked in *Skokie* and *Barrington*, cases based on different facts and cases that are not now before us, is not a ground to set aside the Board's decision here. See *People v. Hill*, 2011 IL 110928, ¶ 6 (court will not consider abstract or hypothetical questions). In other terms, the fact that an arbitrator could err by improperly considering an issue is not a reason for us to interpret the relevant provisions of the rules differently.

¶ 26        Finally, we note that the City also asks that we affirm the Board's decision on the basis that the City's proposal concerned a mandatory subject of bargaining and therefore the submission of that issue to the interest arbitrator could not have constituted an act of bargaining in bad faith. Based on the facts of this case, we need not address that issue. See *McNeil v. Carter*, 318 Ill. App. 3d 939, 944 (2001) (reviewing court need not address the viability of the alternate grounds upon which the trial court might have relied in dismissing the complaint). Instead, we defer to the Board's expertise in its resolution of that issue. See *Board of Trustees*, 244 Ill. App. 3d at 953 (determination of whether specific issues are mandatorily bargainable is best left to the Board as it has the knowledge and experience to balance the equities in a given case).

¶ 27                                        CONCLUSION
¶ 28        For the reasons stated, the judgment of the Board is affirmed.

¶ 29        Affirmed.