*In re* GOVERNING BOARD OF THE SPECIAL EDUCATION DISTRICT OF LAKE COUNTY (Governing Board of the Special Education District of Lake County, Petitioner-Appellant, v. SEDOL Teachers' Union, Lake County Federation of Teachers, Local 504, *et al.*, Respondents-Appellees).

First District (3rd Division)   No. 1—01—3767

Opinion filed June 19, 2002.

Edward N. Druck, of Franczek Sullivan, P.C., of Chicago, and David A. Harley, of Gages Lake, for appellant.

James E. Ryan, Attorney General, of Chicago (Joel D. Bertocchi, Solicitor General, and Nadine J. Wichern, Assistant Attorney General, of counsel), for appellee Illinois Educational Labor Relations Board.

Gilbert Feldman, of Cornfield & Feldman, of Chicago, for SEDOL Teachers' Union.

JUSTICE WOLFSON delivered the opinion of the court:

On October 10, 2000, the Special Education District of Lake County Teachers Union, Lake County Federation of Teachers, Local 504, IFT-AFT, AFL-CIO (Union), filed an unfair labor practice charge against the Special Education District of Lake County (SEDOL), alleging SEDOL violated sections 14(a)(5) and 14(a)(1) of the Illinois Educational Labor Relations Act (the Act) (115 ILCS 5/1 *et seq.* (West 2000)) by refusing to bargain over a mandatory subject of bargaining: the wages, hours, and working conditions of teachers serving on "Local Professional Development Committees" (LPDCs).

After conducting an investigation of the charge, the executive director of the Illinois Educational Labor Relations Board (IELRB) issued a complaint and notice of hearing on November 6, 2000. On January 22, 2001, both parties appeared at a hearing in Chicago, Illinois.

On May 4, 2001, an administrative law judge (ALJ) of the IELRB issued a recommended decision and order (the ALJ's Order). The ALJ concluded SEDOL had violated sections 14(a)(5) and 14(a)(1) of the Act by refusing to bargain with the Union about the wages, hours, and working conditions of teachers serving on LPDCs. On August 31, 2001, the IELRB issued an opinion and order affirming the ALJ's Order.

On appeal, we are required to determine whether the IELRB's decision that SEDOL violated section 14(a)(5) and, derivatively, section 14(a)(1) of the Act by refusing to bargain over the mileage, release time, and stipends of teachers serving on the LPDCs was clearly erroneous. We affirm.

## FACTS

### The Parties

SEDOL is an educational employer as defined in section 2(a) of the Act (115 ILCS 5/2(a) (West 2000)). The Union is an employee organization as defined in section 2(c) of the Act (115 ILCS 5/2(c) (West 2000)), and the exclusive representative, as defined in section 2(d) of the Act (115 ILCS 5/2(d) (West 2000)), of a unit consisting of all certified classroom and itinerant teachers and educators, speech therapists, prevocational coordinators, social workers, educational diagnosticians, nurses, and psychologists employed by SEDOL.

### The Certificate Renewal Act—The Creation of LPDCs

On July 12, 1999, the process by which Illinois teachers were granted renewal of their teaching certificates was amended by Public Act 91—102 (Pub. Act 91—102, § 5, eff. July 12, 1999) (hereinafter the Certificate Renewal Act). See 105 ILCS 5/21—14 (West 2000). The Certificate Renewal Act was enacted in an effort to enhance the knowledge, skills, and professionalism of Illinois teachers. 105 ILCS 5/21—14(e) (West 2000).

The Certificate Renewal Act provides that teachers who renew their teaching certificates after February 15, 2000, will be issued a standard certificate valid for only five years. A standard certificate may be renewed for additional five-year periods, but only after teachers create and submit a "certificate renewal plan" that explains how those teachers plan on engaging in professional development and

continuing education over the next five years. See 105 ILCS 5/21—14(b), 21—14(e) (West 2000).

The Certificate Renewal Act requires Illinois school districts and their respective collective bargaining representatives to establish "Local Professional Development Committees" to review and approve teachers' certificate renewal plans. Each LPDC must consist of at least three classroom teachers, selected by the collective bargaining representative, and two nonclassroom teachers, selected by the school district. See 105 ILCS 5/21—14(f) (West 2000).

The law provides that each school district "shall be paid an annual amount of not less than $1,000 *** for administrative costs associated with conducting the meetings of the [LPDC]." 105 ILCS 5/21—14(k) (West 2000).

The Illinois State Board of Education (ISBE) issued proposed rules implementing the Certificate Renewal Act in March 2000. The ISBE issued final rules, effective on August 14, 2000.

### Bargaining Over the Certificate Renewal Act

Before the effective date of the ISBE rules, beginning in about September 1999, the Union made several requests that SEDOL bargain over the working conditions of the teacher-members of the LPDC. Initially, SEDOL refused to bargain, pending adoption of the final rules by the ISBE.

On June 1, 2000, the Union filed an unfair labor practice charge against SEDOL, alleging its refusal to bargain constituted a violation of sections 14(a)(5) and (a)(1) of the Act. On July 5, 2000, the executive director dismissed that charge. See *Special Education District of Lake County*, 16 Pub. Employee Rep. (Ill.) par. 1070, No. 2000—CA—0071—C (IELRB Executive Director July 5, 2000).

On October 26, 2000, the IELRB affirmed the dismissal, finding the results of bargaining conducted before the adoption of final rules by the ISBE would be of uncertain validity and might have to be renegotiated. See *Special Education District of Lake County*, 16 Pub. Employee Rep. (Ill.) par. 1086, No. 2000—CA—0071—C (IELRB October 26, 2000). The IELRB concluded SEDOL did not violate the Act because bargaining was not possible before issuance of the ISBE's final rules.

After the final rules became effective, in August and September of 2000, SEDOL and the Union exchanged correspondence about scheduling a meeting to discuss development of the LPDCs. On October 10, 2000, the Union filed a second unfair labor practice charge alleging SEDOL: "[o]n August 24, 2000, and at all times thereafter, refus[ed] to bargain over teacher recertification."

On October 16, 2000, the parties met to negotiate teacher recertification issues. The Union presented four proposals. The first proposal was a statement of mutual understanding that the parties would negotiate over the other three proposals. The second proposed four LPDCs and described the teachers they would serve. The third suggested the Union president appoint to each LPDC three classroom teachers who would serve one-year terms.

The fourth and final proposal concerned the working conditions and terms of employment of LPDC members. The Union proposed the teacher LPDC members receive mileage at the rate specified in the collective bargaining agreement for other travel, up to six days of release time that may be taken in half-day increments, and a $250 annual stipend as compensation for work performed outside the work day. This final proposal is the center of the dispute between the parties.

SEDOL's director of human resources responded to the Union's first three proposals. He said he would discuss the fourth proposal, but would not offer a counterproposal or negotiate over it. He gave two reasons for his refusal to bargain: the proposal did not affect the terms and conditions of employment of any SEDOL employees and the "Effect of Agreement" clause in the Agreement waived any bargaining obligations over this issue if one otherwise existed. Only the first reason is relevant to this appeal.

The Union refused to bargain further on anything unless SEDOL agreed to negotiate the Union's fourth proposal. At the end of the meeting, SEDOL's director of human resources told the Union of the statutory requirement for the SEDOL executive board to convene the first LPDC meeting by November 1, 2000. He gave the Union the names of the administrative representative and at-large representative appointed by SEDOL. However, the Union refused to assign any Union representatives to the LPDCs until further negotiations took place.

In a letter dated October 25, 2000, SEDOL notified the Union that if the Union did not appoint its volunteer members to the LPDC by the first LPDC meeting on November 1, 2000, SEDOL would inform certificate renewal applicants that, pursuant to ISBE guidelines, lack of any action by the LPDC would constitute a denial of their applications. The individual teachers could then appeal to the regional professional developmental review committee if they so chose.

On November 1, 2000, SEDOL's executive board convened the first LPDC meeting, as required by section 21—14 of the Illinois School Code (105 ILCS 5/21—14 (West 2000)), but took no action because the Union had not appointed its volunteer members.

Although SEDOL has since requested on several occasions that the Union appoint its members to the LPDC, the Union has continued to refuse to do so.

## The Administrative Proceedings

On May 4, 2001, the ALJ found SEDOL violated sections 14(a)(5) and 14(a)(1) of the Act by refusing to bargain with the Union about the terms and conditions of employment of teachers serving on the LPDCs.

In deciding whether SEDOL violated the Act, the ALJ first determined whether the time and expense teacher-members incurred while serving on LPDCs constitute a mandatory subject of bargaining. To answer that question, the ALJ looked to the Illinois Supreme Court decision in *Central City Education Ass'n v. Illinois Educational Labor Relations Board*, 149 Ill. 2d 496, 599 N.E.2d 892 (1992).

*Central City* set forth a three-part balancing test to determine whether a given issue must be bargained. The first part of the test examines whether the matter concerns "wages, hours and terms and conditions of employment." *Central City*, 149 Ill. 2d at 523.

Before the ALJ, SEDOL contended the matter did not involve wages, hours, and terms and conditions of employment because LPDCs are separate entities from the school district. According to SEDOL, service on the LPDC does not impact a teacher's terms and conditions of employment at SEDOL. SEDOL said a teacher's voluntary service on the LPDC is not controlled or directed by SEDOL and is not directly for the benefit of SEDOL or its students. It is the Union that determines which teachers will serve on the LPDC, said SEDOL.

The ALJ noted the IELRB had considered and rejected SEDOL's contentions in a prior action where the Union sought an injunction. The IELRB had concluded "[t]he terms and conditions of teachers serving of the LPDC clearly constitute 'wages, hours and terms and conditions of employment.'" *Special Education District of Lake County*, 17 Pub. Employee Rep. (Ill.) par. 1006, No. 2001—CA—0023—C, at IX—19 (IELRB October 10, 2000).

> "Whether an employee volunteers for a position is irrelevant in determining whether a matter is a mandatory subject of bargaining. School districts and their unions routinely bargain over pay for those voluntarily serving as club sponsors and members of important school committees. In few, if any, of these situations are employees ever required to be committee members or club sponsors. Volunteering for a duty does not preclude mileage and/or compensation for that duty. Employers and employees are free to bargain about wages, hours and working conditions for these

'volunteers.' " *Special Education District of Lake County*, 17 Pub. Employee Rep. (Ill.) par. 1006, No. 2001—CA—0023—C, at IX—19 (IELRB October 10, 2000).

The IELRB then said:

"Although LPDCs do not report directly to their respective boards of education, teacher-members of these committees are nonetheless employees serving their employer. The teacher-members of the LPDC are selected because they are employees of the respective districts and remain so while they undertake the tasks assigned to the LPDC." *Special Education District of Lake County*, 17 Pub. Employee Rep. (Ill.) par. 1006, No. 2001—CA—0023—C, at IX—19 (IELRB October 10, 2000).

After finding the matter concerned wages, hours, and terms and conditions of employment, the ALJ addressed the second part of the test: "Is the matter also one of inherent managerial authority?" *Central City*, 149 Ill. 2d at 523, 599 N.E.2d at 905.

SEDOL did not contend before the ALJ that the terms and conditions of teachers serving on the LPDC involved matters of inherent managerial authority. Instead, SEDOL's defense against the Union's unfair labor practice charge was that LPDCs are independent entities SEDOL does not govern or control.

The ALJ found that because the terms and conditions of employment of teacher-members of LPDCs are not matters of inherent managerial policy, the *Central City* analysis ended there:

"The subject matter of this dispute constitutes wages, hours and terms and conditions of employment and does not involve matters of inherent managerial authority—thus, it is a mandatory subject of bargaining."

Because of the ALJ's answers to the first two parts of the *Central City* test, there was no need to reach the third part—weighing the benefits bargaining would have for the decision-making process against the burdens bargaining would impose on the employer's authority. *Central City*, 149 Ill. 2d at 523.

On August 21, 2001, the IELRB issued an opinion and order adopting the ALJ's findings of fact and affirmed the ALJ's Order. This appeal followed.

## DECISION

### STANDARD OF REVIEW

■ Our review of the IELRB's decision is governed by the Administrative Review Law (735 ILCS 5/3—101 *et seq.* (West 2000)). 820 ILCS 405/1100, 2205 (West 2000). The scope of our review extends to all questions of law and fact presented by the record before the

court. 735 ILCS 5/3—110 (West 2000). The applicable standard of review, which determines the degree of deference we give to the agency's decision, depends on whether the question presented is one of fact, one of law, or a mixed question of law and fact. *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 204-05, 692 N.E.2d 295 (1998).

■ This case presents a mixed question of law and fact and, pursuant to the supreme court's decision in *City of Belvidere*, the deferential "clearly erroneous" standard of review applies.

"[W]hen the decision of an administrative agency presents a mixed question of law and fact, the agency decision will be deemed 'clearly erroneous' only where the reviewing court, on the entire record, is 'left with the definite and firm conviction that a mistake has been committed.' [Citation.] That the clearly erroneous standard is largely deferential does not mean, however, that a reviewing court must blindly defer to the agency's decision." *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 395, 763 N.E.2d 272 (2001).

We now consider the merits of this appeal.

## MANDATORY SUBJECT OF BARGAINING

■ Section 10(a) of the Act requires educational employers and employee representatives "to meet at reasonable times and confer in good faith with respect to wages, hours and other terms and conditions of employment." 115 ILCS 5/10(a) (West 2000).

Section 14(a)(1) prohibits educational employers from "[i]nterfering, restraining or coercing employees in the exercise of the rights guaranteed under this Act." 115 ILCS 5/14(a)(1) (West 2000). In addition, section 14(a)(5) prohibits educational employers from:

"Refusing to bargain collectively in good faith with an employee representative which is the exclusive representative of employees in an appropriate unit, including but not limited to the discussing of grievances with the exclusive representative ***." 115 ILCS 5/14(a)(5) (West 2000).

SEDOL contends the IELRB erred in concluding a teacher's "voluntary service" on an LPDC is a term and condition of employment with SEDOL. "[V]oluntary service on a non-school district committee is not a labor issue," says SEDOL, "rather it is one of licensure between the [Union], its members and the STCB/ISBE as to how the [Union] members intend to comply with the Act." According to SEDOL, it did not violate the Act by refusing to negotiate in good faith because a teacher's voluntary service on a non-SEDOL committee is not a mandatory subject of bargaining.

The IELRB disagrees. It says the Union's fourth proposal request-

ing mileage, release times, and stipends for teachers serving on the LPDC is a mandatory subject of bargaining because it concerns wages, hours, and other terms and conditions of employment. Affirming the ALJ, the IELRB also relied on *Central City*.

Here, as it did before the IELRB, SEDOL puts all its eggs in one basket: the first part of the three-part *Central City* test. SEDOL says a teacher's service on the LPDC does not affect a teacher's terms and conditions of employment as a SEDOL employee because: (1) LPDCs are a separate entity from school districts; (2) service on LPDCs is voluntary; (3) the LPDC is not controlled or directed by SEDOL; (4) the functions of the LPDC involve a teacher's licensure and are not directly for the benefit of SEDOL or its students; and (5) the teachers are selected for service on the LPDC by the Union, not by SEDOL.

SEDOL does not address the second and third parts of the *Central City* test. Nor will we.

■ We agree with the IELRB. Although LPDCs do not report directly to the school districts or cooperatives they serve, the teacher-members of an LPDC retain their roles as employees of that school district or cooperative while serving on an LPDC. That is because the school district and cooperatives are required to create, establish, and implement LPDCs using three of their own employees/teachers. See 105 ILCS 5/21—14(f) (West 2000) (each LPDC must consist of at least three classroom teachers, selected by the collective bargaining representative, and two non-classroom teachers, selected by the school district).

We also conclude the IELRB was correct when it found "the licensure issues with which SEDOL's LPDC will deal are limited to those concerning SEDOL's teachers." See 105 ILCS 5/21—14(e)(4) (West 2000) ("A certificate renewal plan must initially be approved by the certificate holder's [LPDC]"). Thus, said the IELRB, "an LPDC is an outgrowth of the school district or cooperative that it serves." By serving on an LPDC, teachers perform a function that benefits their specific employer and allows that employer to fulfill its statutory obligations. Consequently, "service on an LPDC is a function of teachers' employment."

With regard to SEDOL's contention "voluntary service on a non-school district committee is not a labor issue," the IELRB correctly found that whether an employee volunteers for a position is irrelevant in determining whether a matter is a mandatory subject of bargaining. Teachers volunteering for a duty do not preclude mileage and/or compensation for that duty. Employers and employees are free to bargain about wages, hours, and working conditions for these "volunteers." See, *e.g.*, *West Chicago School District No. 33 v. Illinois*

*Educational Labor Relations Board*, 218 Ill. App. 3d 304, 578 N.E.2d 232 (1991) (pay for teachers' extracurricular activities constitutes wages, hours, and terms and conditions of employment).

Simply put, recertification is a term and condition of a teacher's employment. Without recertification, there is no employment. The statutory scheme sets out a system for ensuring recertification is accomplished in ways consistent with the state's educational mission. The purpose of recertification is to enhance the knowledge, skills, and professionalism of teachers. 105 ILCS 5/21—14(e) (West 2000). We do not see how it can be said, as SEDOL does, there is no direct benefit to school districts that employ the recertified teachers.

Our review of the entire record does not leave us with the definite and firm conviction that a mistake has been committed. See *AFM Messenger Service*, 198 Ill. 2d at 395. We agree with the IELRB: Under the first part of *Central City*, "The mileage, release time, and stipends received by teachers who serve on LPDCs are matters of wages, hours and terms and conditions of employment."

"Determination of whether specific issues are mandatorily bargainable or not is best left to the IELRB, which has the knowledge and experience to balance the equities in a given case." *Central City*, 149 Ill. 2d at 522. Considerable deference must be given to the IELRB because of its expertise in educational labor matters. *Decatur Federation of Teachers v. Illinois Educational Labor Relations Board*, 199 Ill. App. 3d 190, 197, 556 N.E.2d 780 (1990); *Decatur Board of Education, District No. 61 v. Illinois Educational Labor Relations Board*, 180 Ill. App. 3d 770, 775, 536 N.E.2d 743 (1989). To do otherwise would transform appellate review into trial *de novo*. Such a result would substitute the court's general knowledge for the expertise required of IELRB members. *Decatur Board of Education*, 180 Ill. App. 3d at 775.

We hold the IELRB was not clearly erroneous in finding the mileage, release time, and stipends received by teachers serving on LPDCs constitute a mandatory subject of bargaining.

## CONCLUSION

We affirm the IELRB's decision.

Affirmed.

HALL, P.J., and CERDA, J., concur.